Submitted July 19, reversed November 5, 1971

STATE OF OREGON, *Respondent, v.*
MARTIN GRANT HOGG, *Appellant.*
490 P2d 198

Ken C. Hadley, Deputy Public Defender, and Gary D. Babcock, Public Defender, Salem, for appellant.

Frank J. Coumont, District Attorney, Astoria, for respondent.

Before SCHWAB, Chief Judge, and LANGTRY and THORNTON, Judges.

LANGTRY, J.

Defendant appeals from a conviction for unlawful possession of narcotics. ORS 474.020. The only assignment of error meriting consideration is that the marihuana seized by the officers should have been suppressed.

On the evening of April 26, 1970, three Seaside police officers were sitting in a parked patrol car on a city street looking for a drunk driver reported in the general vicinity. One of the officers saw someone walking on the opposite side of the street, turned his flashlight on the person, recognized him as Martin Hogg, and called him over to ask if he had seen the drunk driver, and, also, according to his testimony at the suppression hearing, to search him for weapons. (From the record, apparently all the activity as pertains to this assignment of error was attributable to one officer.) The officer had searched defendant on prior occasions, but only mentioned one time—a weapons search—at the hearing on the motion to suppress. The defendant, as we will note later, claimed several previous illegal searches had been made of him by the

same officer. Defendant trotted over to the patrol car, and in doing so was observed by the officers to have dropped a shiny object. The same officer who called him over asked defendant if he minded being searched; defendant said he didn't, and was patted down. Nothing was found. In his testimony at the suppression hearing the officer said that he then walked to where he had seen defendant drop the shiny object and picked up a foil package containing marihuana cigarettes. Defendant was arrested for unlawful possession of marihuana. In his direct testimony at the trial, the officer said the search came after he picked up the marihuana, and after the arrest, before placing defendant in the patrol car.

The basis for defendant's motion to suppress is the exclusionary rule enunciated in *Wong Sun v. United States,* 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963): that the evidence was the "fruit" of "official illegality." Defendant asserts previous searches by this same officer were illegal; that he could only anticipate another illegal search, hence his abandonment of the marihuana in such anticipation made the evidence "tainted."

The defendant testified at the suppression hearing, and added, after his testimony otherwise had been completed:

"THE DEFENDANT: Officer Osterholme has on several occasions—I would say seven—searched me in Seaside for no reason at all; just when he happened to see me downtown: twice in my vehicle, three times, four times, and he has searched other people who have been with me for no reason whatsoever that I know of; just being in town. He would see me and then search me, every pocket I had."

To this, and at the time of denying the motion to suppress, the court said:

> "The Court has no response and it is not material at all to this matter. * * * [I]f that is the situation * * * it is not desirable nor legal police practice * * *.
>
> "* * * * * *
>
> "* * * [T]he Court doesn't understand that any citizen, if he is not under some sort of valid, reasonable, probable suspicion of * * * crime, has to either stop and identify himself or to cross a street and converse with officers nor submit to a search * * * if this marihuana had been revealed as a result of a search * * * this Court would have suppressed it. * * * *The search* * * * *was illegal* * * *.*" (Emphasis supplied.)

The court then held that because the marihuana had been abandoned it was not subject to suppression.

The testimony of the police officer at the trial, as distinguished from the motion to suppress, about previous searches was as follows:

First time:

> "A   Once I stopped and searched his truck and him. There was an empty—I believe, an empty wine bottle in the truck and there was also a juvenile with him that had been drinking.
>
> "Q   But you found no evidence of any crime committed by the defendant?
>
> "A   No, sir, I did not."

No reason was stated by the officer for stopping the defendant on the first occasion.

The second time:

> "A   I believe it was on the street and I patted him down and he said, 'I'll take this out of my pocket. It's my cigarettes,' and he pulled out a small case and I asked him what was in that and

he said, 'Oh, something I'm keeping for a friend,' and I said, 'What is that?' and he said a syringe, and I looked in the syringe and it didn't have anything in it, and that was about the end of that."

No reason was stated for stopping the defendant on the second occasion.

The third time:

"A   The third time I was in the Seaside Police Station and a man came in and said that Martin Hogg had threatened him with a knife and he was in a laundromat and I went down to the laundromat and at this time I told him what the man had accused him of and I patted him down and he—I don't even think I patted him down. I believe that Martin took a knife out and handed it to me as the knife that was used in the incident.

"Q   Did it turn out that he threatened the man with the knife?

"A   Yes, he did.

"Q   In defense of himself?

"A   Yes. He stated these people had come in to try and collect some money from him that he owed and that they started roughing him up and that the only reason he pulled the knife was to scare them. I believe was the words he told me.

"Q   And did your investigation basically bear that out as true?

"A   Yes, it did."

Defendant did not testify at the trial, but his objection to the marihuana as evidence was continued at the trial.

Our review of the transcript leads us to conclude that at least two of the previous searches were illegal and unjustified. As we have already noted, the trial court said that the search conducted when defendant came over to the patrol car on the night of his arrest

was also illegal, and if contraband had been discovered it would have been suppressed. At the trial, after having heard this, as we have noted above in his direct testimony, the officer placed the search after the arrest, then, on cross-examination when he was faced with the inconsistency between that and his testimony at the suppression hearing, he said, "I believe I did [pat him down before crossing the road to pick up the shiny object]. I couldn't state for sure now." After more redirect and recross-examination, and an opportunity during the noon hour to read a transcript of his former testimony he returned to his original version of the search.

■ No Oregon cases in point have been found. Initially, as a matter of general search and seizure law, it may be said that in the ordinary case, just as the trial court held, where a defendant has abandoned contraband which is then found by police, he cannot have the evidence suppressed since he has disclaimed interest in the evidence by his abandonment. Even if an illegal search follows the abandonment the evidence is not considered a product of an illegal search because the search itself bore no fruit. *Burton v. United States,* 272 F2d 473 (9th Cir), *cert denied* 362 US 951, 80 S Ct 863, 4 L Ed 2d 869 (1960). We feel that the officer's conduct in the instant case significantly changes the facts so as to make the *Burton* reasoning inapplicable.

A more appropriate rationale was stated in *Gascon v. Superior Court,* 169 Cal App2d 356, 337 P2d 201 (1959). There, the officers stopped the defendant on the street and announced they intended to conduct a search. The defendant fled. Before he was overtaken he dropped a package containing narcotics, and he was charged with their possession. Since the officers

did not have probable cause to search him, the court concluded that the accused was fleeing from an

"* * * attempted illegal invasion of his constitutional rights * * * and * * * he attempted to dispose of the evidence which the officers would have obtained had they been able to complete the threatened unlawful act. * * * [T]he evidence, being the product of the illegal acts of the officers, was illegally obtained." 169 Cal App2d at 359.

Though the case at bar differs factually from *Gascon* in that the threat of an illegal search was more removed here, we believe this does not affect the applicability of that line of reasoning. A case more similar on its facts to the case at bar is *People v. Piedra,* 183 Cal App2d 760, 7 Cal Rptr 152 (1960). There, the officers went to defendant's apartment building and, while there, saw him in the hall and called out to him. When defendant's attention was thus drawn to the officers he stopped and dropped a cellophane bindle which contained heroin. The same officers had illegally searched the defendant on two previous occasions. The court distinguished *Gascon,* and affirmed defendant's conviction, saying:

"* * * In the instant case, there was no statement nor act indicating any illegal invasion of defendant's rights. The defendant suggests, however, that there was an implied threat of illegal search by the officers in view of defendant's previous experiences with them in which, on two occasions, he had assertedly been illegally searched. In making this contention, however, defendant overlooks the presumption that official duty will be regularly performed. Obviously, there is no basis in this record for an appellate court to draw, as a matter of law, inferences from the facts and circumstances contrary to those drawn by the trial court." 183 Cal App2d at 762.

This case, at first blush, appears to be on all fours with the case at bar, but we see good reason for distinguishing it. Here, according to his testimony at the suppression hearing, the officer did proceed to make an illegal search of the defendant before he went to retrieve the abandoned object. Thus, the officer, by his conduct, rebutted any presumption that "official duty will be regularly performed"—to the contrary, he bore out defendant's fear that he intended to illegally search the defendant and the trial court found that he did just that. We cannot condone such practice.

■ On this basis we believe the *Gascon* reasoning and the general tenor of *Wong Sun* should control the case at bar, and that the marihuana which was seized was "tainted" by the illegal conduct of the officer and, therefore, it should have been suppressed.

Reversed and remanded for a new trial.

SCHWAB, C. J., dissenting.

In my opinion a motion to suppress evidence is in effect a pleading which should contain, in the absence of good reason to the contrary, allegations adequate to put the state on notice of what it is expected to meet. In the normal course of events all evidence pertaining to those allegations should be heard and the issue decided at the pretrial hearing on the motion. The motion to suppress in this case read as follows:

"COMES NOW the Defendant and moves the Court for an Order suppressing the evidence obtained from the Defendant, being a narcotic drug, to-wit, Marijuana, on the following grounds:

"(1) That the evidence seized herein was seized prior to an arrest, or during an interrogation which

was unlawful, without a search warrant, and thus the evidence is inadmissible;

"(2) That the officers of Seaside lacked probable cause in stopping the Defendant, the subsequent search, and the obtaining of the evidence;

"(3) That the seizure of the evidence herein involved was illegal for the reasons that the search of the Defendant went beyond the permissible scope of a search incidental to any arrest, if said arrest was valid, in that the Defendant was stopped for no known reason and should not have been subject to any limitations on his liberties and the resulting evidence is inadmissible;

"(4) That the Defendant's constitutional rights afforded under Article I, section 9 of the constitution for the State of Oregon, and the 4th and 5th section of the Amendments of the United States Constitution have been violated."

I find nothing in this motion which told the state that the defendant was seeking to suppress the use of narcotics picked up from the street by the police on the basis of events which had transpired between the police and the defendant, remote in time from the night of the seizure. Nor do I find anything in the record that indicates why it was not reasonable to expect allegations concerning violation of the *Wong Sun* doctrine,[1] if it was otherwise applicable, in the motion to suppress. Furthermore, even after defendant *sua sponte* made statements which, if true, might involve the *Wong Sun* doctrine,[2] there was no effort

---

[1] Wong Sun v. United States, 371 US 471, 83 S Ct 407, 9 L Ed 2d 441 (1963).

[2] While it is not unreasonable to infer from his testimony that the defendant, when called over by the police at the time in question, threw the contraband onto the street because his prior experiences with the police led him to believe he would be searched, he did not state unequivocally that this was his reason

by counsel at that stage or during the trial stage to seek a ruling on the basis of that doctrine. This question was raised for the first time on appeal.

We are not dealing here with a matter which goes to guilt or innocence, but rather with an exclusionary rule which is primarily designed to protect the constitutional rights of society as a whole even at the cost of failing to convict the guilty.

Finally, even assuming that the court, after hearing the defendant's unsolicited comments, should have conducted a *Wong Sun* hearing, it did not. Under such circumstances I would at most remand for a hearing on this question and let the issue of suppression and consequent reversal abide the outcome of that hearing. This procedure was followed with regard to a hearing on the voluntariness of a confession in *State v. Brewton,* 238 Or 590, 395 P2d 874 (1964).

For the foregoing reasons I respectfully dissent.

---

for so doing. It is possible that in an adequate hearing on this matter the cause and effect relationship necessary to an application of the *Wong Sun* doctrine would not be developed.