Argued and submitted September 26, 1979, affirmed in part;
reversed in part and remanded January 28, 1980

# STATE OF OREGON,
*Respondent,*

*v.*

# CALBRUCE RAHIM GREEN,
*Appellant.*

(No. 18-043, CA 13134)

605 P2d 746

Steve Dixon, Certified Law Student, Salem, argued the cause for appellant. With him on the brief were Gary D. Babcock, Public Defender, Salem, and Stephanie A. Smythe, Deputy Public Defender, Salem.

Mary J. Deits, Assistant Attorney General, Salem, argued the cause for respondent. With her on the brief were James A. Redden, Attorney General, Salem, and Walter L. Barrie, Solicitor General, Salem.

Before Buttler, Presiding Judge, and Gillette and Roberts, Judges.

GILLETTE, J.

## GILLETTE, J.

Defendant seeks reversal of his convictions, after trial, of burglary in the first degree and being an ex-convict in possession of a firearm. Defendant makes three assignments of error, two of which we discuss here.[1] The first concerns the seizure of the gun involved in the ex-convict charge. The second assigns error to the manner in which the burglary count of the indictment was amended. We reverse the burglary conviction and affirm the firearms conviction. We turn first to the second assignment of error, which involves amendment of the indictment without resubmission to the grand jury.

Count I of the original indictment stated:

"The above named defendant is accused by * * * of burglary in the first degree in count I and ex-convict in possession of a firearm in count II committed as follows:

"That the above named defendant on or about the 9th day of November, 1976, in Washington County, Oregon did unlawfully and knowingly enter and remain in a building, to-wit: a dwelling, located at 11570 SW Graven Road, Tigard, Oregon with the intent to commit a crime therein; and * * *

Defendant demurred to count I of the indictment on the ground that it was not definite and certain in that there was no allegation as to the particular crime intended. The state conceded this point. The court granted the demurrer and allowed the state to file an amended indictment. The case was not resubmitted to the grand jury. Apparently, the grand jury foreman merely signed the new indictment and dated it the same as the old one. Defendant properly preserved his objections to this procedure.

The amended indictment reads, in pertinent part, as follows:

---

[1] The third, alleging denial of a speedy trial, does not require discussion.

[255]

"The above named defendant * * * did unlawfully and knowingly enter and remain in a building, to-wit: a dwelling located * * * with the intent to commit a crime, to-wit: *theft;* and * * * " (Emphasis added.)

The Oregon Constitution provides, with certain exceptions, that a person shall be charged with the commission of any crime punishable as a felony only on indictment by a grand jury. A person may be charged on an information if the person appears before a circuit court judge and knowingly waives indictment or if a preliminary hearing has been held or knowingly waived. An amended indictment or information may be filed by the district attorney without observing the above procedure whenever, by ruling of the court, an indictment or information is held to be defective only as to *form.* Or Const, Art. VII (Amended), § 5.

The crucial issue is whether the defect in this case is one of form or substance.

The difference between the two was discussed in *State v. Moyer,* 76 Or 396, 149 Pac 84 (1915). In *Moyer,* the defendant was charged with arson. He demurred to the indictment on the ground that it did not state facts sufficient to constitute a crime in that it did not name the owner of the stable the defendant was accused of burning. (An element of the crime of arson was that the building belonged to another). The court sustained the demurrer and allowed the district attorney to amend the indictment without submitting the matter to another grand jury. The defendant appealed his conviction and the Supreme Court reversed.

The court concluded that the amendment was one of substance and therefore unauthorized by the Constitution. The relevant constitutional section at that time provided that no person shall be charged with any crime except upon indictment by a grand jury; "provided, however, that any district attorney may file an amended indictment whenever an indictment has, by a ruling of the court, been held to be defective in *form."* Or Const, Art VII § 18. (Emphasis added.)

The court stated:

"Our Constitution contains the only provision which authorizes such an amendment, but only as to form; and there seems to be a well-recognized distinction between matters that are purely matters of form and matters that go to the substance of the indictment, namely, formal matters which are not essential to the charge and merely clerical errors, such as where the defendant cannot be misled to his prejudice by the amendment, would be the only cases which are permissible under our Constitution. But where there is an omission or misstatement which prevents the indictment from showing on its face that an offense has been committed, or to charge the particular offense, the test of the amendment is whether the same defense is available to the defendant after the amendment as before and upon the same evidence." 76 Or at 399, 147 P at 85.

Matters of form are matters not essential to the charge or mere clerical errors. However, where the indictment or information fails to show, on its face, that an offense has been committed or what the particular offense intended to be charged is, there exists a defect of substance. *See also State v. Russell,* 231 Or 317, 372 P2d 770 (1962) (improper to amend pleadings to conform to proof; the time to amend the *substantial facts* alleged is while the indictment is before the grand jury); *State v. Fair,* 263 Or 383, 502 P2d 1150 (1972); *State v. Erbs,* 9 Or App 95, 496 P2d 38 (1972) (error for the court to submit a different crime, forcible rape, to the jury when the crime charged was statutory rape).

In *State v. Sanders,* 280 Or 685, 572 P2d 1307 (1977), the Oregon Supreme Court held that, in an indictment for burglary, the state must specify the crime it charges the defendant intended to commit when he unlawfully entered a building. The court reasoned that otherwise the defendant would not know what criminal intent the state was going to prove.

"The intent the state charges the defendant had when he entered is important to the defendant. If the

[257]

state can prove the defendant entered illegally with the intent to commit a crime, the defendant faces a maximum of five years in the penitentiary for burglary. (ORS 164.215) If the state only is able to prove an illegal entry but not an intent to commit a crime, the defendant only faces a maximum of 30 days in jail for criminal trespass in the second degree. (ORS 164.245)" *Id,* at 690-691, 572 P2d at 1309.

*Sanders* requires that an indictment specify defendant's intent at the time of the illegal entry. Failure to do so is a failure to allege the specific crime intended. *Id,* at 690, 572 P2d at 1307. *Moyer* states that "where there is an omission * * * to charge the particular offense" there is a defect in substance. *Id,* 76 Or at 399-400, 149 P at 85.

We conclude that this case should have been resubmitted to the grand jury where count I of the original indictment failed to specify the particular offense the defendant was charged with committing. Such a defect is a defect in substance. The court erred in permitting the defendant to be tried under this improperly drawn first count of the charging instrument.

Defendant's other assignment of error concerns the denial of defendant's motion to suppress a handgun found in a sack in the trunk of an automobile from which he had recently fled.

We take our statement of facts from defendant's brief:

"On November 9, 1976, Lake Oswego Police Officer Robert Coleman received a call to assist Officer Martin of his department in a matter involving two vehicles on Carmen Drive. There had been a report of one vehicle pursuing another and shots being fired. When he arrived, Coleman found one of the vehicles, a 1963 Plymouth, parked in a private driveway near the dead end of Carmen Drive.

"Two men at the scene told Officer Coleman that as they approached a friend's house in the area they had seen the Plymouth back out of the friend's driveway and leave the area slowly. When they discovered

their friend's house had been broken into and ransacked, the men pursued the Plymouth until it stopped at a traffic light. At that point, one of the pursuers got out of their vehicle, engaged the driver of the Plymouth in conversation and noticed in the car some property belonging to his friend. When the light turned green the Plymouth took off. As the two men continued to pursue it, some property was thrown from the passenger side of the Plymouth. When the Plymouth approached a dead end, the two suspects bailed out. They were last seen heading north on Boone's Ferry Road.

"Defendant was the registered owner of the Plymouth. Coleman looked inside the car, but not the glove compartment and trunk. He impounded it and had it towed to Bullock Towing Company. There, Coleman wrote down serial numbers and identifying characteristics of the property, but again did not look in the trunk. He did not believe the car contained any inherently dangerous items or items of perishable evidence, though he did consider the possibility that the car contained perishable fingerprints.

"Officer Steven Winegar took possession of the car and keys from Coleman at the towing company. Acting on information from the police dispatcher that the car was involved in a burglary, Officer Winegar 'inventoried' property in the interior and the closed trunk of the car and processed it for fingerprints. He did not act on information from Officer Coleman.

"Officer Winegar did not know what was in the trunk before he opened it. In the trunk he found a paper sack, opened it and found a pistol. The pistol was processed for prints because it 'was stolen'. Defendant's fingerprints were found on the gun. The officer made no effort to secure a search warrant. He said he would not have released the vehicle until he 'was finished with it' had the owner appeared and requested it. At the suppression hearing, the prosecutor conceded this was not an inventory search."

We hold that the facts in this case constitute abandonment—not abandonment in the common law sense, but abandonment for constitutional purposes. Where two suspected thieves have been pursued from the

scene of an apparent burglary and finally leap from their car and flee, they have abandoned any expectation of privacy with respect to the car in the same way that a fleeing robber who drops a bag of loot has abandoned the loot. Society is not prepared to recognize as reasonable—and the constitution does not compel it to recognize as reasonable—any subjective expectation of (or hope for) privacy the fleeing burglars may have retained in the car they left behind. *United States v. Edwards,* 441 F2d 749 (5th Cir 1971); *cf. State v. Crace,* 26 Or App 927, 930, 554 P2d 628 (1976). The trial court properly denied defendant's motion to suppress.

Affirmed in part; reversed in part and remanded.