Argued and submitted September 30, 1986, affirmed March 4, reconsideration denied April 10, petition for review denied May 27, 1987 (303 Or 455)

# STATE OF OREGON,
*Respondent,*

*v.*

# ROBERT HADEN KING, JR.,
*Appellant.*

(82-247; CA A34353)

733 P2d 472

John P. Daugirda, Deputy Public Defender, Salem, argued the cause for appellant. With him on the brief was Gary D. Babcock, Public Defender, Salem.

Stephen F. Peifer and Terry Ann Leggert, Assistant Attorneys General, Salem, argued the cause for respondent. With

them on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

Before Warden, Presiding Judge, and Van Hoomissen and Young, Judges.

VAN HOOMISSEN, J.

## VAN HOOMISSEN, J.

Defendant appeals his conviction for aggravated murder. ORS 163.095.[1] He makes eleven assignments of error, many of which have multiple contentions and arguments. We affirm.

The first indictment in this case was filed in 1982. At that time, defendant was in custody in the State of Washington. Thereafter, he was transferred to Oregon pursuant to the Interstate Agreement on Detainers (IAD), ORS 135.775 *et seq.*

■ Defendant first contends that the trial court erred in denying his motion for an order compelling his return to Washington after the first indictment was quashed, and in granting the state's motion to continue to permit resubmission to the grand jury. Defendant moved to quash the indictment on the ground that the grand jury had consisted of only six persons, in violation of his rights under Article VII (amended), section 5, paragraph 2 of the Oregon Constitution[2] and ORS 132.110.[3] Although an indictment had been

---

[1] Three indictments are involved in this appeal. The first was filed on March 5, 1982, the second on April 18, 1983, and the third on April 19, 1983. The first two indictments were dismissed. Defendant was indicted for soliciting Warren Theophilus Hill to kill Julie Anne Salter. Hill was separately indicted, tried and was convicted of aggravated murder. On appeal, his conviction was affirmed without opinion. *State v. Hill,* 74 Or App 612, 702 P2d 1174, *rev den* 300 Or 162 (1985).

[2] Article VII (amended), section 5, paragraph 2, of the Oregon Constitution, provides:

"A grand jury shall consist of seven jurors chosen by lot from the whole number of jurors in attendance at the court, five of whom must concur to find an indictment."

[3] ORS 132.110 provides:

"After the formation of the grand jury and before it is discharged, the court may:

"(1) Discharge a grand juror who:

"(a) Becomes sick, is out of the county or fails to appear when the grand jury is summoned to reconvene;

"(b) Is related, by affinity or consanguinity within the third degree, to the accused who is under investigation by the grand jury, or held for the commission of a crime; or

"(c) Is unable to continue in the discharge of duties.

"(2) Order that another person be drawn at random and sworn from the jurors then in attendance upon the court, or if no other jurors are there in

returned, the prosecutor had excused one grand juror for business reasons. The court concluded that there was not "good cause" for excusing the juror. It quashed the indictment and gave the state 30 days to resubmit the case. The following day, the state moved to continue for 30 days "for good cause * * * to allow the state to resubmit said matter to the grand jury." Defendant then moved for an order compelling his return to Washington. He argued that Oregon had no authority to hold him without Washington's express consent. The court denied his motion, found that there was good cause to allow resubmission and granted the state's motion.

Article V of the IAD provides, in relevant part:

"(d) The temporary custody referred to in this agreement shall be only for the purpose of permitting prosecution on the charge or charges contained in one or more untried indictments, informations or complaints which form the basis of the detainer or detainers *or for prosecution on any other charge or charges arising out of the same transaction. * * *

"(e) At the earliest practicable time consonant with the purposes of this agreement, the prisoner shall be returned to the sending state." (Emphasis supplied.)

IAD's language permits the receiving state to retain custody and to bring new charges "arising out of the same transaction" as the original charge in the indictment under which the prisoner was transferred. That is precisely what happened here. The trial court did not err in granting the state's motion.

■ Defendant argues that, because the first indictment was quashed on *constitutional* grounds, the trial court did not have authority under ORS 135.530[4] to allow resubmission and

---

attendance, from the master jury list of the county, to take the place of a discharged juror.

"(3) Allow at least five grand jurors to proceed upon good cause shown."

[4] ORS 135.530 provides:

"(1) If the motion to set aside or dismiss is allowed, the court shall order that the defendant, if in custody, be discharged therefrom or, if the defendant has been released, that the release agreement be discharged and the security deposit be refunded as provided by law, unless the court allows the case to be refiled or resubmitted to the same or another grand jury.

"(2) If the court allows the case to be resubmitted or refiled, it must be resubmitted or refiled by the state within 30 days from the date on which the court enters the order. If the case is not resubmitted or refiled within that time, the defendant shall be released from custody or the release agreement discharged or the security deposit returned."

reindictment. However, in addition to relying on constitutional grounds, defendant's motion to quash also expressly relied on statutory grounds for grand jury membership, *i.e.,* ORS 132.010, ORS 132.020(1) and ORS 132.110(2) and (3). The court's order states, in relevant part:

> "THE COURT FINDS that the original indictment herein, having been quashed/set aside, and the Court having given leave to the State to resubmit the case to the Grand Jury, there exists good cause shown that this case be continued for thirty days * * *."

In *State v. Lawrence,* 12 Or 297, 300, 7 P 116 (1885), relied on in *State v. Gortmaker,* 295 Or 505, 509, 668 P2d 354 (1983), the Supreme Court stated that, when a grand jury is not selected as required by law, the indictment is null and void and should be quashed "and the prisoner indicted *de novo.*" Defendant cites no authority, and we are aware of none, which prohibits resubmission after an indictment is quashed. The trial court did not err in denying defendant's motion.

■ Defendant next contends that the trial court erred in denying his motion to dismiss with prejudice for failing to bring him to trial within IAD's 120-day time limit.[5] Defendant arrived in Oregon on November 20, 1982. Without a continuance, the 120-day period would have expired on March 20, 1983. On December 1, 1982, the court granted his motion for a psychiatric evaluation. On January 6, 1983, the court ruled that defendant was able to assist in his defense. He entered a not guilty plea, agreed to an additional eight day continuance and to a trial date of March 28. On March 18, he obtained a

---

[5] Article IV, section c, provides:

> "In respect of any proceeding made possible by this Article, trial shall be commenced within 120 days of the arrival of the prisoner in the receiving state, but for good cause shown in open court, the prisoner or the counsel of the prisoner being present, the court having jurisdiction of the matter may grant any necessary or reasonable continuance."

Article V, section c, provides:

> "If the appropriate authority shall refuse or fail to accept temporary custody of such prisoner, or in the event that an action on the indictment, information or complaint on the basis of which the detainer has been lodged is not brought to trial within the period provided in Article III or Article IV of this agreement, the appropriate court of the jurisdiction where the indictment, information or complaint has been pending shall enter an order dismissing the same with prejudice, and any detainer based thereon shall cease to be of any force or effect."

continuance to April 18. On April 11, the first indictment was quashed. On April 15, the state was granted a 30-day continuance. The trial court found:

"[T]he original indictment herein, having been quashed/set aside, and the Court having given leave to the State to resubmit the case to the Grand Jury, there exists good cause shown that this case be continued for thirty days to determine, pursuant to ORS 135.530, whether a new indictment has been returned. This case continued to May 15, 1983 at 9:00 A.M. for that purpose."

On April 18, the second indictment was filed. On April 19, the third indictment was filed. Defendant was arraigned on it on April 19.

Had there been no continuance, defendant should have been brought to trial by March 20, 1983. He consented to 29 days of continuance. The 120-day limit, by then extended to 149 days, could be extended only for a necessary or reasonable continuance for good cause shown in open court and with defendant or his counsel present. *See* note 5, *supra*. At the April 15 hearing, the trial court found that the state's motion for a continuance was supported by good cause and granted the motion. Because the state was given 30 days, a trial could have been set as late as May 15. He was not tried until 1984; however, his speedy trial claim only involves the time up to April 19, 1983.

Defendant argues that there is a contradiction in the trial court's rulings because, in dismissing the first indictment, the court found that there was not good cause for excusing one grand juror but, when the state requested a continuance, the court found good cause to continue. We see no contradiction. Although the prosecutor lacked good cause to excuse the juror, it does not follow that, when defendant's motion to quash was made just six days before his speedy trial period would expire, the state lacked good cause to seek a continuance to resubmit the case to the grand jury. The trial court did not err in denying defendant's motion.

■ Defendant next contends that the trial court erred in denying his motions to quash and to set aside the third indictment because it was obtained without authority from the court. In denying his motion to quash, the court ruled:

"1) That said indictment was returned within the thirty

days the Court allowed the State to resubmit the case to the Grand Jury.

"2) That the State requested leave of the Court to resubmit to the Grand Jury on April 19, 1983. The court further finds that it gave implied permission to the State to resubmit the case to the Grand Jury on April 19, 1983.

"3) That the indictment returned and filed in the afternoon of April 19, 1983 is not an amended indictment."

In denying his motion to set aside the third indictment, the court ruled:

"1) The indictment returned and filed April 19, 1983, is a new and separate indictment and not an amendment of the indictment returned and filed April 18, 1983.

"2) The indictment of April 19, 1983 was returned and filed within the 30-days allowed by the Court to the State to resubmit the matter to the Grand Jury."

Defendant relies on ORS 132.430.[6] That statute is inapposite. First, he was not "held to answer" after a preliminary hearing on the second indictment. *See* ORS 135.185; ORS 135.195; ORS 135.225; *see also State v. Harwood,* 45 Or App 931, 609 P2d 1312, *rev den* 289 Or 337 (1980); *State v. Rankin,* 21 Or App 721, 536 P2d 538 (1975). Second, ORS 132.430 requires that the grand jury have returned "not a true bill." That is not what happened here. When the matter was first resubmitted to the grand jury, it returned the second indictment.

■ Defendant also relies on Article VII (amended), section 5, paragraph 5, of the Oregon Constitution, which provides:

"The district attorney may file an amended indictment or

---

[6] ORS 132.430 provides:

"(1) When a person has been held to answer a criminal charge and the indictment in relation thereto is not found 'a true bill,' it must be indorsed 'not a true bill,' which indorsement must be signed by the foreman and filed with the clerk of the court, in whose office it shall remain a public record. In the case of an indictment not found 'a true bill' against a person not so held, the same, together with the minutes of the evidence in relation thereto, must be destroyed by the grand jury.

"(2) When an indictment indorsed 'not a true bill' has been filed with the clerk of the court, the effect thereof is to dismiss the charge; and the same cannot be again submitted to or inquired of by the grand jury unless the court so orders."

information whenever, by ruling of the court, an indictment or information is held to be defective in form."

*See State v. Green,* 44 Or App 253, 605 P2d 746 (1980). The state and the grand jury acted with the trial court's permission in returning the third indictment. The record supports the court's finding that the third indictment was not an amended indictment and that the court had given the state permission to obtain the third indictment. The trial court did not err in denying defendant's motions.

Defendant contends that the trial court erred in over-ruling his demurrer to the third indictment. He argues that ORS 163.095(1)(b), defining aggravated murder, is unconstitutionally vague. He also argues that, because the third indictment does not specify what "things of value" were offered, the indictment is not definite and certain, in violation of ORS 135.630(6),[7] and did not "enable a person of common understanding to know what is intended," as required by ORS 132.550(7).[8]

■■ When an indictment lists specifications in the conjunctive form, proof of any specification is sufficient to prove the crime, so long as it is sufficient to establish violation of the statute. It is not necessary to prove each or all of the specifications. *State v. Montieth,* 247 Or 43, 48, 417 P2d 1012 (1966), *cert den* 386 US 780 (1967); *State v. Fowler,* 18 Or App 486, 492, 525 P2d 1061, *rev den* (1974). If an indictment clearly and definitely states facts sufficient to constitute a crime, the mere fact that some of the allegations contained in the indictment are indefinite and uncertain does not render the entire indictment vulnerable to a general demurrer. *State v. Du Bois,* 175

---

[7] ORS 135.630 provides, in relevant part:

"The defendant may demur to the accusatory instrument when it appears upon the face thereof:

"* * * * *

"(6) That the accusatory instrument is not definite and certain."

[8] ORS 132.550 provides, in relevant part:

"The indictment shall contain substantially the following:

"* * * * *

"(7) A statement of the acts constituting the offense in ordinary and concise language, without repetition, and in such a manner as to enable a person of common understanding to know what is intended[.]"

Or 341, 345, 153 P2d 521 (1944). Here, the indictment alleges that defendant agreed to pay "money *and* things of value to cause the death of Julie Anne Salter." (Emphasis supplied.) The allegation that he agreed to pay "money" is not vague or uncertain. The state proved that he offered to pay money for the victim's death, and he makes no challenge against the "money" alternative in this case. The trial court did not err in overruling defendant's demurrer.

Defendant contends that the trial court erred in denying his motions for adjudication of his status as a mentally ill person and to transport him to Washington for a hearing on the applicability of the IAD because of his alleged mental incompetence and in failing to hold that he was not competent to proceed. *See* ORS 161.360. Defendant's first motion was for a hearing to determine his status as a mentally ill person under IAD Article VI, section b. That section provides:

> "No provision of this agreement, and no remedy made available by this agreement, shall apply to any person who is adjudged to be mentally ill."

The court concluded that that section applies only to persons presently in the sending state, that the issue should have been raised in Washington and that defendant had already been found able to assist in his defense. Accordingly, the court denied the motion. Defendant then moved to be transferred to Washington for a determination of his competence. The court denied that motion, repeating its analysis under Article VI, section b. The court's analysis and rulings were correct. We find no error.

As to defendant's competence, after he stopped taking his medications, his counsel informed the court that defendant was unable to assist in his defense. The court ordered Dr. Pavaresh to conduct a competency hearing. Pavaresh concluded that defendant was *not* competent. The court then ordered that defendant be examined at Oregon State Hospital. *See* ORS 161.365. Defendant argues that there should have been no further examination, because the state did not contest Pavaresh's report. ORS 161.370(1) provides:

> "When the defendant's fitness to proceed is drawn in question, the issue shall be determined by the court. If neither the prosecuting attorney nor counsel for the defendant contests

the finding of the report filed by a psychiatrist under ORS 161.365, the court may make the determination on the basis of such report. If the finding is contested, the court shall hold a hearing on the issue. If the report is received in evidence upon such hearing, the party who contests the finding thereof shall have the right to summon and to cross-examine the psychiatrist or psychiatrists who submitted the report and to offer evidence upon the issue. Other evidence regarding the defendant's fitness to proceed may be introduced by either party."

At the hearing, the prosecutor told the court:

"The state is not ready or willing to concede that Dr. Pavaresh's report is accurate. If the defense is asking for a determination by this Court relative to some findings as to defendant's status, it is our intention to ask the defendant be examined, under the statute, at Oregon State Hospital, on the issue of whether or not he is able to proceed. We don't think that an interview at the Clackamas County Jail under those conditions is conducive to careful examination, thoughtful opinion, although I have the highest respect for Dr. Pavaresh's opinions."

That was sufficient to provide a foundation to order another examination. *See* ORS 161.365.

■ Defendant argues that he established that he was not competent to proceed. However, on May 31, his counsel told the court:

"Your Honor, over the past couple of weeks it apparently has been — the situation appears to be Mr. King has reinstated the use of his medication. That appears to be the information from the jail staff. And Mr. King himself, in conversation that I had with him over the last couple of days, including up to and last evening, it appears that the medications are at — Dr. Pavaresh indicates in his report as well as Dr. Larson having the effect on Mr. King which they intended that they would, which is that *he is presently able to understand the nature of the proceedings against him and that he is able to assist.* At this time based on that and the conversations I have had with Mr. King in which it does appear to me that although these reports indicate he does, in fact, suffer from a mental illness, nonetheless on his medications, *he is able to understand the nature of the proceedings against him and to assist his counsel as to the proceedings against him.*" (Emphasis supplied.)

The court found that defendant was competent to proceed.

There is evidence in the record to support that finding and we are bound by it. *Ball v. Gladden,* 250 Or 485, 433 P2d 621 (1968). The trial court did not err in failing to hold that defendant was not competent to proceed.

■ Defendant contends that the trial court erred in granting the state's motion for a finding that defendant had rescinded a plea agreement and, later, in denying his motion to compel specific performance of that agreement. *See* ORS 135.405 *et seq.* The court found:

"[t]hat the defendant has breached and rescinded the plea agreement entered into between the defendant and the State of Oregon * * *."

The court ordered:

"[t]hat the said plea agreement is rescinded and of no further force and effect."

Later, court found:

"[t]hat the State has been prejudiced by the defendant's failure to abide by the plea agreement; that Mr. King made an informed decision to withdraw from the plea agreement and rescind it and desired to go to trial on the matter."

On May 31, defense counsel requested a trial date, stating that defendant was able to understand and to assist in his defense. The trial court's conclusion that the plea agreement had been rescinded was based on defendant's request for a trial date and on a finding that he had failed to comply with the plea agreement. That finding is supported by evidence in the record and we are bound by it. *Ball v. Gladden, supra.* The trial court did not err in granting the state's motion.

■ Defendant's motion to compel specific performance of the plea agreement was heard more than a month after the court had ruled that the plea agreement had been rescinded and two and a half months after defendant had requested a trial date. The prosecutor had been preparing for trial and the state had incurred considerable expense in that preparation. The court found that the state had been prejudiced by defendant's failure to abide by the plea agreement. That finding is supported by evidence in the record and we are bound by it. *Ball v. Gladden, supra.* The trial court did not err in denying defendant's motion.

176

■ ■ Defendant contends that the trial court erred in failing to exclude the testimony of a witness, Lucinda Thomas, who had been hypnotized.[9] Oregon law specifies the procedures to be used in offering such testimony. *See* ORS 136.675 *et seq.*[10] Defendant does not argue that those procedures were not followed. We have previously held that the testimony of a witness who has been hypnotized is admissible; the issue is the weight to be given the testimony, not its admissibility. *See State v. Jorgensen,* 8 Or App 1, 7-10, 492

[9] The identical issue was raised on the identical record in *State v. Hill, supra* n 1.

[10] ORS 136.675 provided:

"If either prosecution or defense in any criminal proceeding in the State of Oregon intends to offer the testimony of any person, including the defendant, who has been subjected to hypnosis, mesmerism or any other form of the exertion of will power or the power of suggestion which is intended to or results in a state of trance, sleep or entire or partial unconsciousness relating to the subject matter of the proposed testimony, performed by any person, it shall be a condition of the use of such testimony that the entire procedure be recorded either on videotape or any mechanical recording device. The unabridged videotape or mechanical recording shall be made available to the other party or parties in accordance with ORS 135.805 to 135.990."

ORS 136.675 was amended in 1983 to change the statutory reference in the last sentence. Or Laws 1983, ch 740, sec 15.

ORS 136.685 provided:

"(1) No person employed or engaged in any capacity by or on behalf of any state or local law enforcement agency shall use upon another person any form of hypnotism, mesmerism or any other form of the exertion of will power or the power of suggestion which is intended to or results in a state of trance, sleep or entire or partial unconsciousness without first explaining to the intended subject that:

"(a) He is free to refuse to be subject to the processes delineated in this section;

"(b) There is a risk of psychological side effects resulting from the process;

"(c) If he agrees to be subject to such processes, it is possible that the process will reveal emotions or information of which he is not consciously aware and which he may wish to keep private; and

"(d) He may request that the process be conducted by a licensed medical doctor or a licensed psychologist, at no cost to himself.

"(2) In the event that the prospective subject refuses to consent, none of the processes delineated in subsection (1) of this section shall be used upon that person."

ORS 136.685 was amended in 1983 to be gender neutral. Or Laws 1983, ch 5, sec 1.

ORS 136.695 provides:

No evidence secured in violation of ORS 136.675 or 136.685 shall be admissible in any criminal proceeding in this state."

P2d 312 (1971), *rev den* (1972). Defendant also contends that the trial court erred in denying his motion to suppress Thomas' out-of-court and in-court identification of Hill.[11] He argues that the process leading to the identification was unduly suggestive. *See State v. Classen,* 285 Or 221, 590 P2d 1198 (1979). The court found that the out-of-court confrontation between Thomas and Hill was not a "planned" confrontation. The court concluded that the out-of-court identification was completely accidental and not suggestive and that Thomas' testimony was admissible. The in-court identification also was permitted. The trial court did not err in failing to exclude the testimony. *State v. Classen, supra.*

Defendant contends that the trial court erred in denying his motion to dismiss the third indictment for failure to provide him with exculpatory evidence.[12] In *Brady v. Maryland,* 373 US 83, 83 S Ct 1194, 10 L Ed 2d 215 (1963), the Supreme Court held that the state's suppression of evidence favorable to an accused violated due process. 373 US at 87. More recently, the Supreme Court has held that

> "[w]hatever duty the Constitution imposes on the States to preserve evidence, that duty must be limited to evidence that might be expected to play a significant role in the suspect's defense. To meet this standard of constitutional materiality, * * * evidence must both possess an exculpatory value that was apparent before the evidence was destroyed, and be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." *California v. Trombetta,* 467 US 479, 488, 104 S Ct 2528, 81 L Ed 2d 413 (1984). (Footnote omitted.)

 Defendant argues that three types of evidence in the state's possession were unavailable for defense testing. First, he asserts that hair samples recovered from the scene were unavailable. However, during a pretrial hearing, defense counsel questioned a crime laboratory witness about hair sample slides marked as a defense exhibit. Thus, it appears that hair samples were available to defendant. Second, he asserts that additional testing should have been done to the murder weapon. "The muzzle of the gun should have revealed blood and tissue 'blown back' from the [victim's] head." However,

---

[11] The identical issue was raised on the identical record in *State v. Hill, supra,* n 1.

[12] The identical issue was raised on the identical record in *State v. Hill, supra,* n 1.

evidence showed that the gun had been buried from sometime shortly after the murder in 1980, until about February, 1982, when it was recovered by Washington police. A crime laboratory witness testified that it was impossible to test for organic material on the gun after that length of time. Nevertheless, it was tested, and only soil and rust were found on it. Defendant has not shown that other testing could have revealed anything other than soil and rust or that there could have been any value to further testing.

■ Third, defendant asserts that the state failed to make available for testing blood samples from around the victim's head and from the bathroom sink. He argues that further testing of those samples might have shown that they included blood from the murderer and, thus, have exculpated him. After a hearing, the trial court adopted its findings from the Hill case on the identical issues:

"(1) The Court finds nothing in the evidence to indicate a struggle by the victim before her death. There are no marks of violence on her body and the house was not disturbed.

"(2) The Court finds no evidence, even from the mechanism of the gun that would reasonably support the proposition that the assailant would have been injured.

"(3) The Court finds conclusively that Julie Salter died from a contact gunshot wound to the head and that the pool of blood under her head was her blood.

"(4) The Court finds that testing this pool under the victim's head for the presence of any other person's blood would have been highly impractical and that testing for this purpose by the defendant other than for blood type was unnecessary.

"(5) With reference to the blood in the sink, the Court finds from the evidence that the blood in the main bathroom sink was that of the victim, Julie Salter.

"(6) The Court finds that Julie Salter died of a contact gunshot wound and that therefore there probably would have been some blowback on the hands of the assailant who probably washed his hands in the sink. There was no evidence of any means by which the assailant himself was injured so the blood in the sink was that of Julie Salter.

"(7) The Court finds that the loss of the blood sample from the pool under the victim's head and the sample from the bathroom sink was inadvertent and not intentional.

"The Court therefore concludes that the State had no obligation to present these samples to the defendant for testing. The Court further finds that the loss of the samples in no way violated any constitutional right of the defendant as there is no evidence that the test results proposed by the defendant would possibly be exculpatory.

"The Court further finds that the .45 casing found near the bookcase was fired in the .45 pistol in evidence and that this .45 was the murder weapon. The Court finds no reason to test the muzzle of the .45 for blood and tissue. If such tests had been possible, the most they would have shown is Julie Salter's blood and tissue."

There is evidence in the record to support those findings and we are bound by them. *Ball v. Gladden, supra.* The trial court did not err in denying defendant's motion.

■■■ Defendant contends that the trial court erred in denying his motion to dismiss on the basis of double jeopardy and prosecutorial misconduct. Following defense counsel's motion *in limine* and the prosecutor's agreement to address any prior crimes or bad acts evidence *in camera,* the following testimony occurred:

"Q. [PROSECUTOR]: Did he say when he first met Mr. Hill, did he say anything about Mr. Hill having done anything for him before?

"A. [WITNESS]: Yes.

"Q. What did he say?

"A. He said [Hill] had done a lot of things for him as far as — oh, he mentioned some murders in Colorado and some four people in the basement of a house in Colorado. And I guess — I don't know, various stories that have —

"[DEFENSE COUNSEL]: Your Honor, I have a matter for the Court."

On defendant's motion, the court declared a mistrial and he was tried again.

Defendant moved for a jury trial on the question whether the indictment should be dismissed on double jeopardy grounds. He argued that the mistrial was the result of prosecutorial misconduct. The trial court denied that motion. The right to a jury trial under Article I, section 11, of the Oregon Constitution, applies to "criminal prosecutions." A

criminal prosecution refers to "establishing before a jury acts declared to be criminal by legislative action." *State v. Hoffman,* 236 Or 98, 107, 385 P2d 741 (1963). Defendant's guilt or innocence was not the subject of the hearing. Therefore, he was not entitled to a jury trial on the double jeopardy issue. *See State v. Keller,* 240 Or 442, 450, 420 P2d 521 (1965); *State v. Hawk,* 38 Or App 117, 119, 589 P2d 1136, *rev den* 286 Or 303, *cert den* 444 US 921 (1979); *Brady v. Calloway,* 11 Or App 30, 39, 501 P2d 72 (1972), *rev den* (1973).

■ In *State v. Kennedy,* 295 Or 260, 274 n 13, 666 P2d 1316 (1963), the Supreme Court set out the standard for reviewing alleged prosecutorial misconduct which can bar further prosecution:

> "[R]etrial is barred by Article I, section 12 of the Oregon Constitution when improper official conduct is so prejudicial to the defendant that it cannot be cured by means short of a mistrial, *and* if the official knows that the conduct is improper and prejudicial *and* either intends or is indifferent to the resulting mistrial or reversal. When this occurs, it is clear that the burden of a second trial is not attributable to the defendant's preference for a new trial over completing the trial infected by an error. Rather, it results from the state's readiness, though perhaps not calculated intent, to force defendant to such a choice." 295 Or at 276. (Emphasis supplied.)

Defendant argues that the prosecutor knew that the witness would testify about the murders. The prosecutor told the trial court that he did not expect the witness to mention them in this case because, in the earlier Salter trial,[13] the witness was asked about defendant's relationship with Hill and testified without mentioning the murders. The trial court stated:

> "THE COURT FINDS that the prosecutor did not intend the answer from the witness that created the mistrial nor was the prosecutor indifferent to the resulting answer that created the mistrial."

There is evidence in the record to support those findings and we are bound by them. *Ball v. Gladden, supra.* We find no error. For similar reasons, defendant's rights under the federal constitution did not bar a new trial. *See Oregon v. Kennedy,*

---

[13] Salter's husband was prosecuted in Seattle in connection with her death.

456 US 667, 676, 102 S Ct 2083, 72 L Ed 2d 416 (1982). The trial court did not err in denying defendant's motion.

Last, defendant contends that the trial court erred in denying his motion for a judgment of acquittal. He argues that the evidence adduced in the state's case-in-chief was not sufficient to allow a reasonable juror to find him guilty beyond a reasonable doubt of aggravated murder. In determining whether the evidence was sufficient, we view it in the light most favorable to the prosecution, *State v. Krummacher,* 269 Or 125, 142-43, 523 P2d 1009 (1974), to determine whether any rational factfinder could have found from it that the essential elements of the crime had been proved beyond a reasonable doubt. *Jackson v. Virginia,* 443 US 307, 319, 99 S Ct 2781, 61 L Ed 2d 560 (1979); *State v. Harris,* 288 Or 703, 721, 609 P2d 798 (1979). We conclude that there was sufficient evidence for reasonable jurors to find beyond a reasonable doubt that defendant was guilty as charged. The trial court did not err in denying defendant's motion.

In sum, defendant makes eleven assignments of error, many of which have multiple contentions and arguments. While we have not written on each of them, we have examined every assignment, contention and argument and we find no error.

Affirmed.