Argued and submitted February 20, resubmitted In Banc December 2, 1987, affirmed
February 10, reconsideration denied April 8, petition for review allowed May 3, 1988
(305 Or 594)

STATE OF OREGON,
*Respondent,*

*v.*

THOMAS HENRY PIDCOCK,
*Appellant.*

(10-85-09438; CA A40456)

749 P2d 597

Larry R. Roloff, Eugene, argued the cause and filed the brief for appellant.

David Schuman, Assistant Attorney General, Salem, argued the cause for respondent. With him on the brief were Dave Frohnmayer, Attorney General, and Virginia L. Linder, Solicitor General, Salem.

VAN HOOMISSEN, J.

Buttler, J., dissenting.

Warden, J., dissenting.

## VAN HOOMISSEN, J.

Defendant appeals his convictions on two counts of unlawful possession of a controlled substance. ORS 475.992(4)(b). He contends that the trial court erred in denying his motion to suppress evidence. The dispositive issue is whether the trial court's conclusion that defendant had abandoned the evidence and, therefore, had no protectible interest in it is correct. We affirm.

On February 14, 1985, a Mrs. Joll and her daughter Mary were driving toward their residence, just off Crow Road, in Lane County. As they approached the mailbox adjacent to their driveway, they observed what appeared to be a pillow or pillowcase lying near the mailbox. They stopped, and Mary examined the pillowcase and found a black leather briefcase. They took the briefcase to their house and spent several minutes trying to get it open. There was no identification on the exterior. They then called the sheriff and reported finding the briefcase. They were told that ordinarily the sheriff would not respond to someone finding lost property. Joll indicated that this particular briefcase appeared to be somewhat unusual and that it was quite nice and new leather, with combination tumbler locks. It was locked at the time, and there was something heavy inside that was sliding around.

On February 15, 1985, at about 8:30 a.m., Deputy Larson went to the Joll residence and examined the briefcase briefly. He turned the tumblers to zero, which opened the case. Not knowing what was in it, and because there was some type of heavy object sliding around in it, he cracked it open an inch or two so that he could peer inside without fully opening the lid. He observed a large stack of money with a $100 bill on top. He also observed what appeared to be an automatic or semi-automatic handgun, a baggie that appeared to contain marijuana, manila envelopes and some other small items which he could not identify. There appeared to be a wire extending from inside the briefcase to its top.

Because of the wire, Larson called the Eugene Police Department bomb squad to have it examine the briefcase. He thought that it might be booby-trapped. The bomb squad took the briefcase outside the Joll residence and x-rayed it. Readily apparent were a handgun, what appeared to be an extra automatic clip with ammunition, eyeglasses and other indistinct

items. They were not able to determine from the x-rays whether there was an explosive device inside. The briefcase was then opened on one side, and its contents were carefully removed. There were two manila envelopes, one sealed. The glasses were wire-rimmed with a fairly thin black plastic coated substance on the wire, which was the wire Larson had observed. The briefcase was not booby-trapped.

Late that morning, the briefcase and its contents were taken to the sheriff's office. The manila envelopes were opened and examined. No identification of the owner was found. State Crime Lab technician Bekkedahl tested the substances found in the envelopes and determined that they were cocaine and methamphetamine.

After the property was returned to the sheriff's office from the crime lab, the money was determined to be about $9,000. Defendant's fingerprints were found on the envelopes. The weapon was a .45-caliber automatic, fully loaded, which appeared to be in working order.

The sheriff was concerned about the welfare of citizens in the area where the briefcase was found, fearing that someone who had lost it might harass or threaten residents to get it back. Because of that concern, in mid-afternoon of February 15, the news media were invited to come to the sheriff's office for a press conference. On the morning of that day, a telephone call had come to the *Eugene Register-Guard* from a person requesting that a classified ad be placed concerning a briefcase lost in the Crow Road area. That afternoon, a second phone call was received from an adult female who indicated that she wanted the classified ad withdrawn. She asked that the bill be sent to "Tom Pidcock" and she gave defendant's address and phone number.

Further investigation revealed that a number of witnesses would testify that, between 6:00 and 6:30 p.m. on St. Valentine's Day, people had been observed in the Crow Road area driving a vehicle slowly up and down the road apparently looking for something. The vehicle was registered to defendant.

After being advised of the "finders-keepers law," ORS 98.005 *et seq,* Joll placed an advertisement in the *Register-Guard* advertising the finding of the briefcase and how it

could be obtained. She specifically rented a separate post office box for the sole purpose of responses to her advertisement. Other than junk mail, she received no responses. The *Register-Guard* published news stories at least twice between February 16 and February 20 about the briefcase.

The sheriff did not obtain a warrant for the search of the briefcase or of its contents. Defendant testified that he did not intend to abandon the briefcase and that he had called the sheriff's department before the newspapers were called and before the sheriff's office indicated that they had the briefcase in their possession. He said that he did not assert his claim to the briefcase, because he did not want to incriminate himself.

Defendant moved to suppress the briefcase and its contents, relying on Article I, section 9, and the Fourth Amendment.[1] At trial, the parties stipulated that defendant had called the sheriff before the press conference, had then learned that the sheriff had the briefcase and thereafter made no attempt to claim or recover it. The trial court denied the motion. Although it is not entirely clear, the court's *rationale* appears to have been that defendant had specifically abandoned the property.

Defendant contends that the police did not have probable cause to open and search the briefcase. He argues that, before the initial opening by Larsen, there was no evidence that a crime had been committed; that, once the police had opened the briefcase, they needed a warrant to open and search the envelopes; and, that, lacking a warrant, the opening and searching were unlawful. He argues that he did not abandon the briefcase and had attempted to recover it until he learned that it was in the possession of the police. The state argues that defendant had no legitimate expectation of privacy in the briefcase, because he had specifically abandoned it.

■ Evidence will not be suppressed if the person challenging a search and seizure has abandoned the property.

---

[1] Article I, section 9, provides, in relevant part:

"No law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search, or seizure; * * *."

The Fourth Amendment provides, in relevant part:

"The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated."

"Society is not prepared to recognize as reasonable—and the constitution does not compel it to recognize as reasonable—any subjective expectation of (or hope for) privacy in abandoned property." *State v. Green,* 44 Or App 253, 260, 605 P2d 746 (1980); *see State v. Hogg,* 7 Or App 99, 104, 490 P2d 198 (1971). Abandonment is the voluntary relinquishment of the possession of an object by the owner with the intention of terminating his or her ownership. The intent to abandon must be clear and must be accompanied by some specific act of abandonment. *See Rich v. Runyon,* 52 Or App 107, 112-13, 627 P2d 1265 (1981).

■　Defendant did not abandon the briefcase when it fell out of his truck; he was unaware that it had fallen out. He subsequently attempted to find it by searching for it and by ordering a classified ad. However, when he learned that the sheriff had the briefcase, he made no further effort to claim or recover it and discontinued activities already begun. Nothing the police did caused him to forego his interest in the property. He did not know that they had opened the envelopes and had tested their contents. Cancellation of the ad and his failure to undertake any efforts to recover the briefcase were specific acts of abandonment. From the stipulated facts, it is clear that defendant had no intention thereafter of ever asserting any ownership of or interest in the briefcase or its contents.

■ ■　Defendant argues that any so-called abandonment was done in an effort to avoid self-incrimination and that he cannot be held to have given up his constitutional right against unreasonable searches. We disagree. One who acts to abandon property cannot claim a constitutional violation, even if the act was done to avoid police action. *State v. Green, supra.* Defendant's argument also is contrary to federal authority. *See Abel v. United States,* 362 US 217, 80 S Ct 683, 4 L Ed 2d 668 (1960); *Hester v. United States,* 265 US 57, 44 S Ct 445, 68 L Ed 898 (1924).

　　Affirmed.

　　**BUTTLER, J.,** dissenting.

　　Assuming, *arguendo,* that defendant ultimately abandoned the briefcase, he did not do so until *after* the police had opened the envelopes and tested their contents without a warrant.

The majority, after correctly stating the law of abandonment, goes on to say:

> "Defendant did not abandon the briefcase when it fell out of his truck; he was unaware that it had fallen out. He subsequently attempted to find it by searching for it and by ordering a classified ad. However, when he learned that the sheriff had the briefcase, he made no further effort to claim or recover it and discontinued activities already begun. Nothing the police did caused him to forego his interest in the property. He did not know that they had opened the envelopes and had tested their contents. Cancellation of the ad and his failure to undertake any efforts to recover the briefcase were specific acts of abandonment. From the stipulated facts, it is clear that defendant had no intention *thereafter* of ever asserting any ownership of or interest in the briefcase or its contents." 89 Or App at 448. (Emphasis supplied.)

It is clear from the majority's application of the law that no act of abandonment occurred until the ad was cancelled and defendant thereafter failed to undertake any efforts to recover the briefcase, both of which "specific acts" occurred after the envelopes were opened. The majority has reached the wrong conclusion based on its application of the law to the facts.

Given that defendant did not abandon the briefcase before the critical time, the envelopes remained his effects, and opening them and testing their contents invaded his privacy interest in them. *State v. Owens,* 302 Or 196, 729 P2d 524 (1986). Because there was nothing about the envelopes that "announced their contents," the police were prohibited by Article I, section 9, of the Oregon Constitution from opening them and testing their contents. *State v. Owens, supra.*

Accordingly, I would reverse and remand.

Newman, J., joins in this dissent.

**WARDEN, J.,** dissenting.

When the sheriff's deputy searched the envelopes in defendant's briefcase—the contents of which are the only evidence in dispute—defendant was actively trying to retrieve the lost briefcase and its contents. When he learned that the sheriff had the briefcase, he merely halted his search and maintained a prudent silence. Yet the majority holds that the search did not violate his rights, because he had abandoned all

interest in the briefcase. A respect for reality causes me to dissent.

The majority does not assert that the search of the envelopes was legal if defendant retained any rights in them, and it apparently measures those rights by the common law of property ownership.[1] On that basis, the search violated defendant's rights.

As the owner of the envelopes, defendant had a property interest and a privacy interest in them. *State v. Owens,* 302 Or 196, 206, 729 P2d 524 (1986). The deputies' action in seizing and opening the envelopes violated both of those interests. To hold that defendant abandoned the envelopes and may not thereafter challenge that action requires a determination that he abandoned his ownership of them.

To prove that defendant abandoned his ownership of the envelopes, the state had to show that he voluntarily relinquished his possession with the intent of terminating his ownership without vesting ownership in any other person. *Dober v. Ukase Investment Co.,* 139 Or 626, 629, 10 P2d 356 (1932); *Rich v. Runyon,* 52 Or App 107, 112-113, 627 P2d 1265 (1981). An act of abandonment must be "some clear and unmistakable affirmative act or series of acts indicating a purpose to repudiate ownership, or inconsistent with any further claim of title or ownership. In other words, an unequivocal and decisive act or acts of relinquishment must be evident." 1 CJS "Abandonment," § 6. (Footnotes omitted.)

The majority does not claim that defendant had made any affirmative act of abandonment before the deputies' search. The facts that the majority recites show the opposite. Thus the search violated defendant's rights *at the time it occurred.* Even if it can be said that defendant *later* abandoned his ownership, the majority gives no basis for holding that he thereby lost his right to challenge the *previous* illegal search, and I can think of none.

In any case, defendant's actions did not constitute an abandonment. There was no affirmative act of repudiation or

---

[1] I say "apparently," because the majority cites, but does not clearly rely upon, *State v. Green,* 44 Or App 253, 605 P2d 746 (1980), a case decided under the Fourth Amendment, not under Article I, section 9, of the Oregon Constitution. *See State v. Belcher,* 89 Or App 401, 404, 749 P2d 591 (1988), (Warden, J., dissenting).

relinquishment of ownership in what he did. Once he learned that the police had the briefcase and knew its contents, his choices were to claim his property, at the probable cost of facing criminal charges, or to do nothing. "We cannot equate an unwillingness to invite a criminal prosecution with a voluntary abandonment of any interest * * *." *Walter v. United States,* 447 US 649, 658 n 11, 100 S Ct 2395, 65 L Ed 2d 410 (1980) (opinion of Stevens, J.). For all practical purposes, his decision to do nothing was compelled.

Defendant also did not intend to abandon the briefcase. "To equate a passive failure to claim potentially incriminating evidence with an affirmative abandonment of property would be to twist both logic and experience in a most uncomfortable knot." *State v. Joyner,* 66 Hawaii 543, 545, 669 P2d 152 (1983). Defendant did not throw the briefcase away, *see Hester v. United States,* 265 US 57, 44 S Ct 445, 68 L Ed 2d 898 (1924), nor did he dispose of it as trash. *See Abel v. United States,* 362 US 217, 80 S Ct 683, 4 L Ed 2d 668 (1960); *State v. Purvis,* 249 Or 404, 438 P2d 1002 (1968). He simply lost it. Nothing in his later actions showed an intent to abandon it. Canceling the newspaper advertisement and failing to respond to stories about the finding of the briefcase were simply prudent steps to take in the circumstances; they were not acts which unequivocally show an intent to abandon the briefcase, and there is no basis for an inference that he had that intent. The parties stipulated that he would testify that he did not. Even if we assume that the trial court implicitly found that defendant abandoned his property, there is no evidence in the record to support that finding.

Under the majority's reasoning, all the police need to do to avoid the consequences of an illegal search of unattached property, such as baggage or parcels in transit, is to make a public announcement of what they have done and of where the owner can find the illegally searched goods. When the owner, to no one's surprise, does not claim the property, the prosecution can tell the trial court that the owner has abandoned it; under today's decision, the court must accept that as fact. I cannot agree to giving so little meaning to rights which the constitution guarantees.

Therefore, I dissent.