**STATE OF OREGON,**
*Plaintiff-Respondent,*

*v.*

**STEPHEN GREGORY ROWELL,**
aka Stephen G Rowell,
*Defendant-Appellant.*

Multnomah County Circuit Court
071236074, 071236212, 080532479;
A143095 (Control), A143096, A143097

283 P3d 454

Ryan T. O'Connor, Senior Deputy Public Defender, argued the cause for appellant. With him on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Janet A. Klapstein, Senior Assistant Attorney General, argued the cause for respondent. On the brief were John R. Kroger, Attorney General, Mary H. Williams, Solicitor General, and Timothy A. Sylwester, Assistant Attorney General.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

Defendant was convicted of 24 counts of identity theft, five counts of first-degree theft, two counts of computer crime, and two counts of first-degree forgery. Much of the prosecution's evidence derived from the search of a computer that police opened in the process of inventorying the contents of an automobile in which defendant was a passenger. One item inventoried was a laptop bag. The bag contained a stolen computer; the computer contained information that, along with other information independently obtained, supported issuance of a warrant to search defendant's residence; in that residence, police found incriminating evidence. On appeal, defendant advances three assignments of error. First, he argues that the trial court erred in failing to suppress the laptop bag and its contents, the computer. Second, relatedly, he assigns error to the trial court's denial of his motion to suppress evidence found during the search of his residence because the warrant application for that search was supported by evidence discovered as a result of the assertedly illegal search of the computer. Third, he assigns error to the trial court's failure to merge two of his identity theft convictions. We agree with defendant that the search of the laptop bag was unlawful and that the computer and the evidence found therein should have been suppressed. On the record before us, however, we cannot determine whether the affidavit in support of the warrant would have been sufficient to justify issuing the warrant if the computer-derived information had been excised, nor can we discern whether some of defendant's convictions derived entirely from information that was not traceable to the computer. Therefore, we reverse and remand for further proceedings.

We state the facts consistently with the trial court's findings and undisputed testimony in the record. While on patrol on September 27, 2007, Portland Police Officer Strawn saw two vehicles speeding and swerving into oncoming traffic; the vehicles were traveling at approximately 45 miles per hour in a 25 miles per hour residential zone. Strawn turned on his overhead lights and siren and followed the vehicles. One of them pulled over, and the other drove off. Defendant was one of two back seat passengers in the

vehicle that pulled over. Strawn discovered that the vehicle was a rental, and, when the driver gave Strawn an expired rental agreement, Strawn decided to arrest the driver and to impound the vehicle.

Strawn then asked the passengers for identification. In responding, defendant was defensive. He asserted that he had done nothing wrong and asked why Strawn needed to know his name. Strawn said that defendant had witnessed a crime and that he might need a statement from him. The other male passenger gave a false name. When back-up officers arrived, the driver was removed from the vehicle, handcuffed, searched for weapons, and put in a patrol car. At some point, Strawn called the rental company and determined that the rental agreement had been renewed by the driver. Nonetheless, the three passengers were told to sit on the curb while the officers inventoried the impounded vehicle. The passengers were told that, after the inventory was completed, they would be free to take what they needed and leave.[1]

Strawn proceeded to inventory the vehicle. When he opened the trunk, he saw a briefcase, a camera case, a laptop bag, a backpack, and some plastic grocery bags. He asked the passengers whether any of the items in the trunk belonged to them. The female passenger indicated that a purse in the passenger compartment belonged to her. The other male passenger said that the briefcase in the trunk was his and consented to its search, but when Strawn discovered that the main compartment was locked, the male passenger indicated that he did not have a key. Initially, no one claimed ownership of the other items in the trunk. Defendant, in particular, indicated that nothing in the car belonged to him. When one of the other passengers indicated that the items were left in the trunk by someone not present, defendant then stated that the items belonged to a friend of his, Mikey, and that he was watching them for Mikey, though defendant also said that he had only known Mikey a few weeks and did not know his last name. Because

---

[1] Defendant does not argue he was unlawfully stopped at that point, nor does he argue that, once Strawn discovered that the rental agreement had been extended, he had no authority to impound the vehicle and inventory its contents. We do not address those questions.

defendant appeared nervous and his story had changed, Strawn believed that he needed to investigate to determine ownership of the laptop bag.

Strawn opened the side pocket of the laptop bag and saw a box of checks that had defendant's name on it. He asked defendant about it, and defendant said that someone must have put the box in the bag without his knowledge. Officer Daniels, who was assisting with the inventory, opened the main compartment of the bag and saw that it contained a laptop. He took it out and recorded its model and serial number. As Daniels was opening the bag, defendant stated that he believed that the officers needed to obtain a search warrant to open it. Daniels called the model and serial numbers into the service net and determined that the laptop had been reported stolen. Defendant was arrested for possession of stolen property. Police later obtained a search warrant to analyze the files on the stolen laptop.

Defendant was stopped again while driving on November 17, 2007; he was arrested, and the officer impounded the vehicle and performed an inventory search. Based on evidence discovered during and resulting from the September 27 and November 17, 2007, stops, police obtained a warrant to search defendant's residence. Defendant was subsequently indicted in three cases for over two hundred separate counts, including identity theft and forgery.

Defendant filed motions to suppress evidence derived from the search of the laptop bag related to the September 27, 2007, traffic stop and evidence obtained from the subsequent search of his residence, citing Article I, section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution.[2] He argued that the warrantless search of the laptop bag, a closed container, was not supported by any exception to the warrant requirement. Therefore, he contended, because the tainted evidence derived from the unlawful search was used to obtain the warrant under which police searched his residence, that search as well was unlawful and its fruits had to be suppressed. The trial court denied the motion to

---

[2] Defendant also filed a separate motion to suppress evidence derived from the November 17, 2007, stop. Defendant does not assign error to the trial court's denial of that motion.

suppress the evidence derived from the search of the laptop bag, concluding that, although the officers did not have probable cause to open the bag—a conclusion that the state does not contest on appeal—the officers were entitled to open the bag as part of their inventory of the vehicle and to determine ownership "under the circumstances * * * where there'd been a denial of ownership and some conflicting stories given." The trial court also rejected defendant's challenge to the sufficiency of the search warrant for defendant's residence.

Defendant subsequently waived his right to a jury trial, reserving his right to appeal the denial of his motions to suppress, ORS 135.335(3), and, after a trial on stipulated facts, he was convicted of 24 counts of identity theft, ORS 165.800, five counts of first-degree theft, ORS 164.055, two counts of computer crime, ORS 164.377, and two counts of first-degree forgery, ORS 165.013. The remaining counts were dismissed, and defendant was sentenced to 12 consecutive sentences of 13 months each for a total of 156 months in prison with three years of post-prison supervision, despite defendant's argument that all of the convictions for identity theft should merge into a single conviction.

Defendant now appeals, assigning error to the trial court's denial of his motion to suppress the evidence derived from the warrantless search of the laptop bag resulting from the September 27, 2007, stop, the trial court's denial of his motion to suppress the evidence discovered at his residence pursuant to a search warrant, and the court's decision not to merge two of his identity theft convictions.

The state's primary argument in its answering brief and at oral argument—indeed, the only argument to which it devotes any significant analysis—is that defendant cannot prevail because, even if the search of the laptop bag was unlawful (which the state does not concede), the illegality did not violate *defendant's* rights under Article I, section 9, because he had no possessory or privacy interest in the bag's contents. That issue, however, arises only if we conclude that the search was unlawful; if it was not unlawful, then the state prevails because *nobody's* rights were violated. We therefore begin with the question of the search's legality.

Article I, section 9, provides, in part, that "[n]o law shall violate the right of the people to be secure in their persons, houses, papers, and effects, against unreasonable search or seizure[.]" It is axiomatic that a warrantless search is unlawful unless an exception to the warrant requirement applies. *State v. Davis*, 295 Or 227, 237, 666 P2d 802 (1983). In this case, the state argues that the search fell within an exception for inventory searches and an exception for determining the ownership of lost property.

Police may conduct a search to inventory property if (1) the property is lawfully impounded and (2) the inventory is conducted pursuant to a properly authorized administrative program that (3) precludes the exercise of discretion by the law enforcement person conducting it. *State v. Atkinson*, 298 Or 1, 9-10, 688 P2d 832 (1984). "If the evidence shows that the inventory deviated from the established policy or procedures of the particular law enforcement agency, the inventory should be deemed invalid." *Id.* at 10; *State v. Delaney*, 224 Or App 463, 464, 197 P3d 621 (2008). As with all warrantless searches, the state has the burden of establishing that the exception applies. ORS 133.693(4); *State v. Tucker*, 330 Or 85, 89, 997 P2d 182 (2000).

Defendant does not contend that the vehicle was not lawfully impounded. He focuses instead on the officers' implementation of Portland's properly enacted inventory process. Chapter 14C.10 of the Portland City Code (PCC) authorizes officers to inventory both impounded vehicles and the personal property of persons taken into police custody. Section 14C.10.030(C)(3) sets out the policy for inventorying closed containers in impounded vehicles. That section states, "Unless otherwise provided in this Chapter, closed containers located either within the vehicle or any of the vehicle's compartments will not be opened for inventory purposes." The only provision of "this Chapter" that deals with opening closed containers is section 14C.10.040, "Inventories of Persons in Police Custody." That provision sets out the policy for inventorying persons in police custody and provides circumstances when certain closed containers may be opened. As applicable here, those circumstances are as follows:

"A.   A police officer will inventory the personal property in the possession of *a person taken into police custody* and such inventory will be conducted whenever:

"1.   Such person will be either placed in a secure police holding room or transported in the secure portion of a police vehicle[.]

"* * * * *

"C.   Inventories of the personal property in the possession of *such persons* will be conducted according to the following procedures:

"1.   An inventory will occur *prior to placing such person into a holding room or a police vehicle*, whichever occurs first. However, if reasonable suspicion to believe that the safety of either the police officer(s) or the person in custody or both are at risk, an inventory will be done as soon as safely practical prior to the transfer of custody to another law enforcement agency or facility.

"* * * * *

"3.   A closed container in the possession of *such person* will have its contents inventoried only when:

"* * * * *

"c.   The closed container is designed for carrying money and/or small valuables on or about the person including, but not limited to, closed purses, closed coin purses, closed wallets and closed fanny packs."

PCC 14C.10.040 (emphases added). Thus, PCC 4C.10.040(C)(3)(c) authorizes officers to inventory the contents of a closed container "in the possession" of a person taken into police custody when the container "is designed for carrying money and/or small valuables on or about the person * * *." *State v. Connally*, 339 Or 583, 590, 125 P3d 1254 (2005).

We agree with defendant that he had not been "taken into police custody" at the time when the officers searched the laptop bag. PCC 14C.10.020(D) defines "police custody" as:

"1.   The imposition of restraint as a result of an 'arrest' as that term is defined at ORS 133.005(1);

"2.   The imposition of actual or constructive restraint by a police officer pursuant to a court order;

"3.   The imposition of actual or constructive restraint by a police officer pursuant to ORS Chapter 430 [dealing with allegedly mentally ill persons], or Chapter 419B [dealing with juveniles]; or

"4.   The imposition of actual or constructive restraint by a police officer for purposes of taking the restrained person to an approved facility for the involuntary confinement or detaining of persons pursuant to Oregon Revised Statute or this Code."

ORS 133.005(1), as referenced above in PCC 14C.10.020(D)(1), provides that "'[a]rrest' means to place a person under actual or constructive restraint or to take a person into custody for the purpose of charging that person with an offense. A 'stop' as authorized under ORS 131.605 to 131.625 is not an arrest." The physical action that an officer takes to effect an arrest for purposes of ORS 133.005(1) "must be done 'for the purpose of charging that person with an offense.'" *State v. Alexander*, 238 Or App 597, 600, 243 P3d 476 (2010), *rev den*, 349 Or 654 (2011) (quoting *State v. Pierce*, 226 Or App 224, 229, 203 P3d 290, *rev den*, 346 Or 213 (2009)). At the time of the inventory search, defendant was seated with the other passengers on a curb next to the vehicle, and he was not free to leave. However, Strawn testified that the purpose of the detention was to obtain statements from the occupants of the car as possible witnesses to a crime, not to charge defendant with an offense. Thus, defendant was not actually or constructively restrained under PCC 14C.10.020(D)(1). Further, there was no court order, defendant was neither an allegedly mentally ill person nor a juvenile, nor was the purpose of the restraint to take defendant into custody. Thus, the Portland inventory policy did not authorize searching the laptop bag on the ground that it was in defendant's possession.

As noted, the driver of the vehicle was under arrest and being held in the back of the patrol car during the inventory search. Opening the laptop bag because it might have been in the driver's constructive possession, however, was also unauthorized: The undisputed facts establish that

the vehicle was impounded and inventoried *after* the driver was placed in the back of the patrol car, contrary to PCC 14C.10.040(C)(1), which requires that the inventory occur *before* the person is placed in the patrol car. In sum, the only authority under Portland's inventory policy to open closed containers applies to persons who are taken into custody, and such inventory must occur before the person is placed in a holding room or a police vehicle. The officers here did not comply with the inventory policy, so that exception to the warrant requirement does not justify the search.[3]

The state also maintains that opening the bag and extracting the computer were permissible under an exception to the warrant requirement that authorizes law enforcement officers to ascertain the owner of lost property. That exception derives from *State v. Pidcock*, 306 Or 335, 340, 759 P2d 1092 (1988), *cert den*, 489 US 1011 (1989). In that case, a citizen found a bag containing an expensive-looking, locked briefcase beside a rural road in Lane County. *Id.* at 337. She turned it over to police, who subsequently opened it and, in order to determine its owner, also opened manila envelopes that were inside it. *Id.* at 337-38. The envelopes contained contraband. *Id.* at 338. The Supreme Court noted that a citizen who finds lost property has a statutory duty under ORS 98.005 to attempt to ascertain its owner and that, when the citizen turned the briefcase over to law enforcement authorities, they succeeded to the position of the finder and also had a duty to seek the owner. *Id.* at 339. *Pidcock*—the only case involving *lost*, as opposed to *abandoned* property—does not apply here. At the time that the inventory was conducted, the officers—although they had a suspicion that the bag contained stolen property or contraband—had no suspicion, much less knowledge, that the bag was lost. Defendant had asserted that he was watching it for his acquaintance. The state correctly observes that the police had no legal duty to believe him, but that fact is beside the point. There is no evidence that their disbelief

---

[3] That being the case, we need not decide whether the laptop bag was "designed for carrying money and/or small valuables on or about the person including, but not limited to, closed purses, closed coin purses, closed wallets and closed fanny packs." PCC 14C.10.040(C)(3)(c). Nor do we need to decide whether the driver had "possession" of the bag because, even if he did, the inventory policy authorized opening it only before he was placed in the police vehicle.

derived from a suspicion that the bag was "lost," that is, that its owner had mislaid it in the trunk of the vehicle or that its owner had somehow been deprived of it. Indeed, they justified their inventory search on the ground that the bag *was* the personal property of one of the vehicle's occupants, and the state maintains that the search was lawful because the officers conducted it in order to "verify that [the computer] was indeed stolen." Neither *Pidcock* nor any other case establishes an exception to the warrant requirement that would allow police to open a closed container in order to determine whether its contents were or were not stolen, and we decline to create such an exception here. If police have probable cause to believe that stolen property is within a closed container, the proper course of action is to obtain a warrant to open it.

Further, even if there had been a suspicion that the bag was lost, that suspicion could not justify proceeding to extract the computer from the bag and recording its serial number—the action that led to the discovery that the bag was stolen and, ultimately, to the disputed evidence.[4] That is so, because the officer discovered a box of checks with defendant's name on it before he extracted and searched the computer. Once the officer made that discovery, the search could no longer be justified as a reasonable attempt to identify the owner of *lost* property.

Thus, neither of the state's arguments in support of the warrantless search is persuasive. The search was not lawful. That conclusion, however, does not end our inquiry. As the Supreme Court explained in *State v. Tanner*, 304 Or 312, 315-16, 745 P2d 757 (1987), the question of whether a particular search is lawful and the question of whether evidence derived from such a search must be suppressed are separate inquiries. Evidence must be suppressed only if the unlawful search violated the rights of the person seeking suppression: "The issue in this case thus is not whether the police violated section 9 * * * but whether the police violated

---

[4] The serial number enabled the police to discover that the computer was stolen; that discovery enabled them to obtain a warrant to examine the computer's contents; that warrant led to the discovery of evidence used to obtain the warrant to enter defendant's residence; that entrance led to the discovery of much incriminating evidence.

defendant's section 9 rights." *Id.* The state maintains in this case that they did not.

That argument has two components: first, whether the status of defendant with respect to the laptop bag and its contents is such as to confer on him a protected possessory or privacy interest; and second, if there is such an interest, whether he relinquished or abandoned it. Regarding the first issue, defendant contends that, as the asserted guardian of the bag, he had an interest that was analogous to the interest of a bailee. *See State v. Hoover*, 219 Or 288, 296, 347 P2d 69 (1959) (bailee has protected interest in entrusted property). The state's only response is that defendant cannot have any protected interest in the bag or its contents because a thief can have no protectable interest in stolen property.

That argument is definitively refuted in *Tanner*. The defendant in that case stored stolen videotapes and equipment in an acquaintance's home. 304 Or at 314. Police conducted a concededly unlawful search of the home and discovered the stolen goods. *Id.* An issue in that case was whether the defendant could have the goods suppressed due to a violation of his rights. *Id.* The court observed,

> "An unlawful search that uncovers effects such as stolen goods * * * which * * * may not legally be possessed, will nevertheless result in suppression of those effects because the unlawfulness involves an infringement of rights apart from possessory interests (or the lack thereof) in the stolen goods * * * seized as a consequence of the unlawful search."

*Id.* at 316-17; *see also State v. Kock*, 302 Or 29, 725 P2d 1285 (1986) (affirming suppression of stolen goods discovered in unlawful search).

Furthermore, at the time that they conducted the search, the police did not know that the bag contained stolen goods. The lawfulness of their actions, of course, must be gauged by the totality of the circumstances as known by those who search at the time of the search. All of the cases cited by the state for the proposition that a thief does not have constitutionally protected interests in stolen property involve property that the police knew was stolen at the time of the search or seizure. *State v. Peterson*, 114 Or App

126, 129-31, 834 P2d 488, *rev dismissed*, 315 Or 272 (1992) (the defendant did not have a privacy interest in stolen dolls that he had on display to the public and was offering for sale; thus their seizure was justified by the plain view exception to the warrant requirement); *State v. Garoutte*, 104 Or App 418, 421, 801 P2d 881 (1990) (the defendant had no privacy rights in the use or occupancy of a stolen car he was driving once he was lawfully removed from the car). Here, in contrast, the officers suspected, but did not know, that the laptop bag was stolen at the time of search, and nothing about the bag indicated in plain view that it was stolen. Therefore, the state did not meet its burden to prove that the search of the laptop bag did not violate any of defendant's constitutionally protected interests.

We next consider whether defendant relinquished that interest. "[T]he determination whether a defendant has relinquished a constitutionally protected interest in an article of property involves both factual and legal questions [that we] review[ ] in the same manner [as we] review[ ] other search or seizure questions arising under Article I, section 9." *State v. Cook*, 332 Or 601, 607, 34 P3d 156 (2001). Thus, we are bound by the trial court's findings of historical fact if evidence supports them, but we assess anew whether those facts meet constitutional standards. *Id.*

An "abandonment" of Article I, section 9, interests in personal property occurs when there is a voluntary relinquishment of those interests. *State v. Linville*, 190 Or App 185, 193, 78 P3d 136 (2003), *rev den*, 337 Or 34 (2004). Defendant did not expressly disclaim all interest in the laptop bag. Although he initially denied owning the bag, he subsequently declared that he was watching it for a friend and again asserted his rights to the bag when the officers began to open it. As the court held in *Cook*, a defendant stating that an article of property does not belong to him does not alone objectively establish an intention to relinquish all constitutionally protected interests in that property. 332 Or at 608. Thus, even his initial denial of ownership did not necessarily amount to a complete relinquishment of his Article I, section 9, rights. And that initial disavowal was renounced when he claimed that he was watching the bag

for someone else. Therefore, under those circumstances, the officers could not have reasonably concluded that defendant intended to relinquish his Article I, section 9, interests in the laptop bag.

Because the search of the laptop bag was not justified by any of the exceptions to the warrant requirement argued by the state, and because we conclude that the warrantless search of the laptop bag violated defendant's Article I, section 9, rights, we conclude that the trial court erred in denying defendant's motion to suppress the evidence discovered as a result of that search. That conclusion obviates the need to decide defendant's argument that the search also violated his Fourth Amendment rights.

Defendant also assigns error to the trial court's denial of his motion to suppress the evidence obtained as a result of the warranted search of his residence, arguing that evidence discovered from the illegal search of the laptop bag and its contents was used to obtain the warrant. Our review of the warrant application reveals that it relies on evidence discovered from both the September 27, 2007, search of the laptop bag and the November 17, 2007, stop that defendant has not challenged. On the record before us, however, we cannot determine whether the affidavit in support of the warrant would have been sufficient to justify issuing the warrant if the computer-derived information had been excised, nor can we discern whether some of defendant's convictions derived entirely from information that was not traceable to the computer. Therefore, we reverse and remand for further proceedings.[5]

Reversed and remanded.

---

[5] Because the ultimate outcome of this case is unknown, we do not reach defendant's third assignment of error regarding merger of two of his convictions for identity theft.