Argued and submitted June 26, 2013, reversed and remanded May 14, 2014

STATE OF OREGON,
*Plaintiff-Respondent,*

*v.*

BRENDEN VANBUREN,
*Defendant-Appellant.*

Curry County Circuit Court
11CR0094; A148781

327 P3d 555

Kristin A. Carveth, Deputy Public Defender, argued the cause for appellant. With her on the brief was Peter Gartlan, Chief Defender, Office of Public Defense Services.

Tiffany Keast, Assistant Attorney General, argued the cause for respondent. With her on the brief were Ellen F. Rosenblum, Attorney General, and Anna M. Joyce, Solicitor General.

Before Armstrong, Presiding Judge, and Nakamoto, Judge, and Edmonds, Senior Judge.

NAKAMOTO, J.

**NAKAMOTO, J.**

Defendant appeals a judgment of conviction for unlawful possession of a Schedule I controlled substance, ORS 475.840. He assigns error to the trial court's denial of his motion to suppress evidence discovered during a warrantless search of a closed bag that was located several feet outside of the entrance to his apartment. The state argued that the search was lawful under *State v. Pidcock*, 306 Or 335, 759 P2d 1092 (1988), *cert den*, 489 US 1011 (1989), because the police reasonably believed that the bag was lost property and conducted the search to ascertain the identity of the bag's owner. The court agreed with the state and denied defendant's motion. On appeal, defendant argues that *Pidcock* does not apply when, as here, it was not objectively reasonable for the police to conclude that the property was actually lost. The state responds that (1) defendant did not preserve that argument; (2) neither *Pidcock*, nor the statute interpreted in that opinion, ORS 98.005 (1973), *amended by* Or Laws 1989, ch 522, § 1, Or Laws 2013, ch 220, § 1, entails such a reasonableness requirement; and (3), in any event, it was reasonable in this case to conclude that the bag was lost property. Assuming *arguendo* that ORS 98.005[1] and *Pidcock* authorize a police officer who finds lost property to conduct a warrantless search of it to identify its owner, we hold that the officer's subjective belief that the property is lost must be objectively reasonable under the circumstances. It was not objectively reasonable under the circumstances here for the police to believe that defendant's bag was lost. The trial court erred when it concluded otherwise. Accordingly, we reverse and remand.

We limit our review to the facts available to the trial court when it decided the motion. *State v. Mazzola*, 238 Or App 201, 203, 242 P3d 674 (2010). The relevant facts are not in dispute. Officer Oller and Sergeant Giovannetti of the Gold Beach Police Department went to defendant's

---

[1] The amendments to ORS 98.005 (1973) are minor and do not bear on this appeal. In the remainder of this opinion, all references to that statute are to either the version existing at the time the Supreme Court issued *Pidcock*, or to the version existing at the time of defendant's trial in the instant appeal. Our holding regarding that statute applies equally to both those versions, as well as the current version.

apartment one evening to investigate allegations that he had been making threatening phone calls to another individual.[2] The entrance to defendant's apartment was located on the ground floor of a two-story apartment building. There are three to four additional units in this building.

A raised walkway abuts the ground floor. The walkway is approximately 10 feet wide and 20 feet long. All tenants have access to the walkway. The walkway may be accessed from the street—there is no locked gate to prohibit the general public from entering; however, there can be parked cars that would-be entrants must walk around to reach the walkway.

Upon arriving, Oller and Giovannetti knocked on defendant's door and the window adjacent to his door for a period of no more than two minutes. Oller then noticed a closed black bag lying on the walkway near a small table, from "[a]pproximately three" to "[a]t most five feet" away from defendant's front door. Oller testified that the bag was "[m]aybe 75 feet" away from the street, on private property, and that a person walking down the street could not have seen the bag.

There was nothing on the bag's exterior to indicate the owner's identity. Oller believed that the there may have been valuables in the bag because "[t]hose bags usually have video equipment or cameras inside of them." Giovannetti also thought that the bag looked like "some sort of camera bag." Later, at defendant's omnibus hearing, the state asked Giovannetti, "When you looked at [the bag], * * * were you thinking this is probably [defendant's], or were you thinking you don't know who this belongs to?" Giovannetti responded, "I honestly didn't know who it belonged to." Giovannetti then stated that the bag appeared to him to be lost property.

After noticing the bag, Oller "collected [it] * * * for safekeeping" and then opened it to "identify the owner" and "identify what valuables were inside of it." When he opened the bag, Oller discovered some prescription medication bottles, marijuana, and what appeared to be psilocybin mushrooms. Defendant's name was on the prescription bottles.

---

[2] Telephonic harassment is a Class B misdemeanor. ORS 166.090.

As Oller opened and searched the bag, Giovannetti continued to knock on defendant's door. At that point, defendant answered the door. Defendant was ultimately indicted for possession of psilocybin mushrooms.[3]

Defendant filed a motion to suppress the evidence discovered during the warrantless search of the bag on the ground that it had been obtained through a search that violated Article I, section 9, of the Oregon Constitution. The state responded that, "because, when Officer Oller and Sergeant Giovannetti observed the bag, the bag was in a common area of an apartment complex with no one around[,]" *Pidcock* authorized the warrantless search of defendant's bag as lost property. Following testimony from Oller and Giovannetti as to the above-recited facts, defendant asserted that *Pidcock* did not govern because it was not reasonable to conclude that the bag was actually lost. The court then denied the motion, explaining that

> "the officer had reason and was reasonable in believing that [the bag] would contain something of value. The officer had a legitimate purpose to check inside the bag to try to identify the owner of that bag * * *. He's attempting, as a finder of lost property, to attempt to return the property, and he had reason to search it * * *—it was a lawful search of the bag in that attempt."

On appeal, the parties renew their dispute as to whether the police reasonably concluded that the bag was lost property. The parties also disagree as to whether, as a threshold matter, such a reasonableness requirement even exists. The state argues additionally that defendant failed to preserve the latter argument. *See* ORAP 5.45(1) ("No matter claimed as error will be considered on appeal unless the claim of error was preserved in the lower court * * *.").

We briefly consider, and reject, the state's preservation argument. The state maintains that defendant's suppression argument in the trial court focused on "whether the bag was *actually* lost, not whether the finder's *conclusion* that it was lost had to be reasonable." According to the

---

[3] Defendant had legal prescriptions for the medications. The record suggests that defendant had a medical marijuana card permitting him to possess the marijuana.

state, the latter argument "was not presented, or at least not presented clearly enough for the trial court to comprehend it[.]" We disagree. The preservation requirement exists to ensure that trial courts have an opportunity to understand and correct their own possible errors and that the parties are not taken by surprise, misled, or denied opportunities to meet an argument. *State v. Vanornum*, 354 Or 614, 632, 317 P3d 889 (2013); *see also State v. Mack*, 219 Or App 119, 125, 183 P3d 191, *rev den*, 345 Or 301 (2008) ("[W]here the broad legal issue has been adequately identified to the trial court, the issue will be deemed preserved for purposes of appeal."). We conclude that both the court and the state understood that the proper interpretation of *Pidcock* was at issue in this case. As noted above, the state relied on objective facts to argue that the search here was permissible. Defendant distinguished *Pidcock* on the basis that, given the objective facts in that case, the conclusion that the property was lost was a reasonable one. When examining Oller and Giovannetti—the only two witnesses—during the pretrial hearing, both parties focused on eliciting testimony regarding the objective reasonableness of the officers' conclusion that defendant's bag was lost. Furthermore, the trial court, in denying defendant's motion, expressly relied on its conclusion that Oller "was reasonable in believing that" his search of the bag was justified. It is thus evident that all involved understood the implicit premise of defendant's argument that *Pidcock* requires an objectively reasonable conclusion that property is lost.

We turn to the merits of defendant's appeal. We review the ruling on the motion to suppress for legal error, although we are bound by the trial court's findings of historical fact if there is evidence in the record to support them. *State v. Vasquez-Villagomez*, 346 Or 12, 23, 203 P3d 193 (2009).

Article I, section 9, protects "the right of the people to be secure in their * * * effects, against unreasonable search, or seizure[.]" "It is axiomatic that a warrantless search is unlawful unless an exception to the warrant requirement applies." *State v. Rowell*, 251 Or App 463, 469, 283 P3d 454, *rev den*, 353 Or 127 (2012). In this case, the state argues that the search fell within an exception for determining ownership of lost property.

That exception derives from the Supreme Court's opinion in *Pidcock*. *See Rowell*, 251 Or App at 472. *Pidcock* thus serves as the cornerstone of the parties' arguments in this appeal. We begin, therefore, with a comprehensive review of the court's opinion in that case, as well as the historical and procedural facts leading up to it, as relevant to this appeal.

The facts from *Pidcock* are as follows. A woman and her daughter were driving home when they observed what appeared to be a pillow or pillowcase lying near the mailbox adjacent to their driveway. 306 Or at 337. They stopped to examine the pillowcase and found a black leather briefcase inside. *Id*. They took the briefcase home and tried to open it, to no avail. *Id*. The women called the sheriff to report that they had found the briefcase, noting that it was unusual in that it was quite nice and, although locked, contained something heavy inside that was sliding around. *Id*. The following day, a sheriff's deputy opened the case and observed a large stack of money, a handgun, a baggie that appeared to contain marijuana, and some manila envelopes, one of which was sealed. *Id*. at 337-38. The briefcase and its contents were taken to the sheriff's office, where the manila envelopes were opened and examined. *Id*. at 338. The sheriff had not obtained a warrant for the search of the briefcase or its contents. *Id*. at 339. No identification of the owner was found. *Id*. at 338. The envelopes contained cocaine and methamphetamine. *Id*.

"After being advised of the 'finders-keepers law,' ORS 98.005 *et seq*," *Pidcock*, 306 Or at 338, the mother took certain measures, prerequisite under ORS 98.005, to lawfully acquire the money in the briefcase. (Internal quotation marks omitted.) For example, she "placed an advertisement in the [local newspaper] advertising the finding of the briefcase and how it could be obtained." *Id*. The newspaper published at least two stories about the briefcase within the following week, which, under ORS 98.005, must also occur before a finder can keep lost-and-found property. *Id*.

The defendant was identified as the owner, arrested, and charged with unlawful possession of a controlled substance. *Id*. at 337-38. Before trial, the defendant moved to suppress the briefcase and its contents, relying on Article I,

section 9, of the Oregon Constitution and the Fourth Amendment to the United States Constitution. *Id.* at 339. He argued that (1) the police had no authority to open and search the briefcase; (2) the police had no probable cause to believe that the briefcase contained contraband; and (3) once police opened the briefcase, they needed a warrant to open and search the manila envelopes. *Id.* at 340.

The prosecutor responded that the sheriff examined the manila envelopes to determine if they contained identification. *Id.* The defendant disputed that that was the sheriff's motivation. *Id.* at 341. The trial court resolved that factual dispute in the state's favor, finding that the sheriff's deputies opened both the briefcase and the manila envelopes inside of it in an attempt to identify the owner. *Id.* at 340-41. The trial court then concluded that "'[t]here was a reasonable basis for inquiry by the party that found it, and secondly by the officers that assisted the party that found it to [search for] *** identification[,]'" and that "'the action to open the briefcase was reasonable under the circumstances.'" *Id.* at 341. Accordingly, the trial court denied defendant's motion. *Id.* at 337.

The Supreme Court observed that the facts demonstrated that the defendant was still actively attempting to recover the case and its contents at the time of the warrantless search. *Id.* at 339. The court thus concluded that the defendant had not abandoned the briefcase when the deputies opened it, and the court instead treated the briefcase and its contents as lost property. *Id.*

Citing ORS 98.005, the court noted that "[f]inders of lost property have a statutory duty to attempt to return the property to its owner." *Id.* According to the court,

> "[t]he statutes concerning lost or mislaid property, taken together, place a burden on the finder of lost property to discover the owner of the property. ORS 98.005 gives the finder a claim to the property if the owner is unknown. If the owner is known, ORS 98.005 does not apply."

*Id.* at 340. The court reasoned by extrapolation that, "[w]hen the finder of the property turned it over to law enforcement officers, on the finder's own initiative, the deputies were placed in the position of the finder." *Id.* at 339.

The court then reviewed the trial court's findings and conclusions set out above. The court observed that, "[u]nder the facts as determined by the trial court, the sheriff's deputies were simply assisting the finder of the property to ascertain the identity of the owner or to determine if the owner of the briefcase was indeed unknown, as described in ORS 98.005." *Id.* at 340. The court agreed with the trial court's conclusion that "[t]hat was reasonable." *Id.* at 342. The court held that, while assisting the citizen-finder of lost property, "an officer may open the briefcase in an attempt to identify the owner, just as the statute would make it reasonable and proper for the citizen to have done the same act." *Id.* at 340. The Supreme Court took care to delineate the scope of its holding, clarifying that the defendant "loses the motion to suppress, because the deputies were not searching the briefcase or its contents for contraband related to any criminal activity. Rather, when the police opened the briefcase and the envelopes, they were simply trying to identify the owner." *Id.* at 339. The court stressed that, "[h]ad the deputies opened [the property] in search of contraband, they would have violated defendant's state * * * constitutional rights." *Id.* at 342.

As is evident from our recitation of the facts in *Pidcock*, that case addressed the particular situation of lost property that was discovered initially by someone other than the police, who then delivered the property to the police, notifying them that it was lost. Accordingly, as noted, the Supreme Court's reasoning in *Pidcock* focuses on the rights and duties that accrue to law enforcement officers who are "simply assisting the finder of the property to ascertain the identity of the owner or to determine if the owner of the [property] was indeed unknown, as described in ORS 98.005." *Id.*; *see State v. Morton*, 110 Or App 219, 222, 822 P2d 148 (1991) (describing *Pidcock* as holding, specifically, "that a finder of lost or abandoned property has a statutory duty * * * to return it to its owner and, should that finder turn the property over to the police, they in turn are placed in the position of the finder").[4]

---

[4] *Morton* also involved property—a woman's purse—that was found initially by a citizen, who reported the find to police. 110 Or App at 221. We have identified only one other case that invokes *Pidcock* in the context of lost property: *State v. Paasch*, 117 Or App 302, 843 P2d 1011 (1992). *Paasch* likewise involved

Here, in contrast, the police discovered defendant's property themselves—no one reported the bag lost, and the police were not assisting anyone in ascertaining the owner's identity. However, defendant does not argue that, by right of that distinction, *Pidcock* does not apply. For purposes of this opinion, we therefore assume—as do the parties—that *Pidcock* authorizes police to search lost property that they discover directly, so long as the purpose of the search is to identify the owner and not to locate contraband related to criminal activity.

Oller's purpose in searching the bag is a factual question. *Pidcock*, 306 Or at 341; *Morton*, 110 Or App at 222. Here, the trial court found that Oller searched the bag to identify the owner, not to locate contraband. There is evidence in the record to support the trial court's finding, and it is thus binding on us. *Ball v. Gladden*, 250 Or 485, 443 P2d 621 (1968). In any case, defendant disputes neither that finding nor Oller's good faith belief that the bag was lost.

Instead, defendant argues that the duties of finders of property stated in ORS 98.005, as interpreted in *Pidcock*, authorize police to search found property only if it is reasonable to conclude that the property is lost. The state counters that a good faith belief on the part of the finder is sufficient to bring the search within the orbit of *Pidcock*. The state reasons that neither ORS 98.005 nor the relevant case law "speak to the belief of the finder" or "the requirement of a reasonable belief." The state is correct to the extent that neither ORS 98.005 nor *Pidcock* expressly dictate that a finder's conclusion that property is lost must be objectively reasonable. Nevertheless, we conclude that such a requirement inheres in both ORS 98.005 and *Pidcock* alike.

Because the court's reasoning in *Pidcock* is rooted in its interpretation of "[t]he statutes concerning lost or mislaid property, taken together," 306 Or at 340, and ORS 98.005 specifically, we begin with an examination of those statutes' text in context, along with any legislative history that is useful to the analysis. *State v. Gaines*, 346 Or 160, 166, 171-72, 206 P3d 1042 (2009). Context includes related

property—a wallet—that was discovered first by a citizen and then turned over to police. 117 Or App at 304-05.

statutes and case law. *State v. Klein*, 352 Or 302, 309, 283 P3d 350 (2012).

At the time the Supreme Court decided *Pidcock*, as is the case now, the rights and duties of finders and owners of money or goods were set out in three statutes in ORS chapter 98: ORS 98.005 (pertaining to rights and duties of finders of money or goods), ORS 98.015 (1973), *amended by* Or laws 1989, ch 522, § 2, Or Laws 2013, ch 220, § 2 (pertaining to liability of a noncomplying finder and forfeiture of money and goods to the county), and ORS 98.025 (pertaining to owners' rights). We also consider ORS 164.065, a closely related statute referenced in ORS 98.015 that criminalizes a finder's failure to take reasonable measures to return lost property to its owner. *See State v. Bailey*, 346 Or 551, 561 n 4, 213 P3d 1240 (2009) (relying on closely related statute as context); *see also* Commentary to Criminal Law Revision Commission Proposed Oregon Criminal Code, Final Draft and Report § 126, 134 (Jul 1970) (commission commentary) (describing ORS 164.065 as the criminal law counterpart to the three statutes in ORS chapter 98 that pertain to the rights and duties of finders of lost goods).

Under ORS 98.005,

"(1)  If any person finds money or goods * * * and if *the owner of the money or goods is unknown*, such person * * * shall give notice of the finding in writing to the county clerk of the county in which the money or goods was found. Within 20 days after the date of the finding, the finder of the money or goods shall cause to be published in a newspaper of general circulation in the county a notice of the finding * * *. Each such notice shall state the general description of the money or goods found, the name and address of the finder and final date before which such goods may be claimed.

"(2)  If no person appears and establishes ownership of the money or goods prior to [a certain date] after the date of the notice to the county clerk under subsection (1) of this section, the finder shall be the owner of the money or goods."

(Emphasis added.)

The text of ORS 98.015 reads,

"If any person who finds money or goods * * * fails to comply with ORS 98.005, the person shall be liable, upon

conviction for violation of ORS 164.065, to the county for the money or goods or the full value of the money or goods. The county treasurer shall hold the money or goods or their value for the owner thereof and shall publish notice of the finding of the money or goods in the manner provided in ORS 98.005. If the owner has not reclaimed such money or goods within [a certain time] after the date of the first publication of notice by the county treasurer, the owner shall forfeit the rights of the owner to the value of such money or goods and the value of such money or goods shall be placed in the general fund of the county to be used for the payment of the general operating expenses of the county."[5]

The subsequent statute, ORS 98.025, reads,

"If an owner of money or goods found by another person appears and establishes a claim to such money or goods within the time period prescribed by ORS 98.005 or 98.015, whichever applies, the owner shall have restitution of such money or goods or their value upon payment of all costs and charges incurred in the finding, giving of notice, care and custody of such money or goods."

The final statute that we consider, ORS 164.065, dictates that

"[a] person who comes into control of *property of another that the person knows or has good reason to know to have been lost,* * * * commits theft if, with intent to deprive the owner thereof, the person fails to take reasonable measures to restore the property to the owner."

(Emphasis added.)

The wording of ORS 98.005 expressly limits application of that statute to circumstances in which "any person finds money or goods * * * and * * * the owner of the money or goods *is unknown* * * *." (Emphasis added.) That text contemplates an objective standard by which to assess whether the property is lost. The operative verbs, "to be" and "to know,"[6] separately and together, connote a state of objective reality apart from and beyond the subjective

---

[5] As with ORS 98.005, the amendments to ORS 98.015 are minor and do not bear on this appeal.

[6] "Unknown" means "not known." *Webster's Third New Int'l Dictionary*, 2502 (unabridged ed 2002). "Known" is the past participle of "to know." *Id.* at 1253.

perception of the finder. *See, e.g., Webster's Third New Int'l Dictionary*, 189 (unabridged ed 2002) (defining "be" as "to equal in meaning : have the same connotation * * * as <God *is* love> <January *is* the first month>" (emphasis in original); *see also id.* at 1252 (defining "know" to mean, variously, "to * * * have direct unambiguous cognition of," "to recognize the quality of : see clearly the character of," "to apprehend with certitude as true, factual, sure, or valid," "to have cognizance, consciousness, or awareness of something: be aware of the existence or fact of something," and "to have information : have acquaintance with facts"). The state does not point to anything in the text to support its argument that ORS 98.005 extends to circumstances in which a finder has merely a good faith but not objectively reasonable belief that the owner is unknown. We are mindful of the admonition not to "insert what has been omitted" when construing a statute. ORS 174.010; *Carlson v. Myers*, 327 Or 213, 224, 959 P2d 31 (1998).

The text of ORS 164.065 offers additional support for our conclusion that the legislature expected that the belief of a finder of money or goods that the property is lost would be reviewed under an objective standard. That statute refers to "property of another that the person *knows or has good reason to know* to have been lost[.]" (Emphasis added.) The definitions of "know" set forth above apply here as well. Furthermore, as we have noted in a different, but not inapposite, context,

> "'knowledge' as used in statutes and regulations often refers either to actual knowledge—a state of mind based on facts and information—or to constructive knowledge—*referring to the extent to which information gives one reason to know a fact, whether or not a person has actual knowledge of the fact.*"

*Carlson v. Martin*, 160 Or App 350, 357-58, 983 P2d 1031, *rev den*, 329 Or 287 (1999) (emphasis added). The emphasized reference in ORS 164.065 to a finder's actual *or* constructive knowledge clarifies that, under that statute, the status of property is to be determined by objective criteria reasonably available to the finder. As noted above, 262 Or App at 725, the legislature drafted ORS 164.065 specifically to address the same class of property that ORS 98.005 through ORS

98.025 address. In our view, therefore, ORS 164.065 suggests that the conclusion that property is lost must be objectively reasonable for purposes of ORS 98.005 through ORS 98.025 as well. In other words, we infer from the fact that, under ORS 164.065, constructive knowledge by itself—that is, absent actual knowledge—exposes a defendant to criminal liability, that the related civil statutes, ORS 98.005 through ORS 98.025, also require a finder's consideration of information reasonably available to the finder in making a determination about the status of the property. In sum, we find multiple indicia in the statutes concerning lost or mislaid property, taken together, that those statutes require a finder's belief that property is lost to be objectively reasonable. The case law further buttresses that conclusion.

Again, we acknowledge that, as the state here asserts, the Supreme Court in *Pidcock* did not expressly hold that an objective test is required. However, as an initial matter, the state overlooks the significant fact that the reasonableness of the finders' determination that the property was lost was not at issue in *Pidcock*. Instead, *Pidcock* involved, first, whether a warrantless search of lost property was constitutional, and, second, *the scope* of an otherwise permissible warrantless police search of lost property. 306 Or at 342. Subsequent cases similarly considered issues stemming from warrantless searches of undisputedly lost or mislaid property. *See Paasch*, 117 Or App at 304, 306 (considering the state's argument that "there is no reasonable expectation of privacy in a lost wallet" as well as whether police exceeded the permissible scope of a warrantless search of the wallet); *see also Morton*, 110 Or App at 223 (holding that the warrantless police search of a mislaid purse turned over to police by the finder was permitted under *Pidcock* but that the subsequent search of a cigarette case inside the purse was not because police had already found identification in the purse by that point).

Moreover, the Supreme Court in *Pidcock* did appear to consider the reasonableness of the police conduct, as did the trial court in initially denying the motion to suppress. As we recounted above, the trial court in *Pidcock* concluded that "'[t]here was *a reasonable basis* for inquiry by * * * the officers that assisted the party that found it to [search

for] \*\*\* identification[,]'" and that "'the action to open the briefcase was *reasonable under the circumstances.'" Pidcock*, 306 Or at 341 (emphasis added). The Supreme Court also independently, if summarily, assessed the objective reasonableness of the sheriff's purported intent in opening the envelopes to identify the owner, concluding that "[t]hat was reasonable." *Id.* at 342; *see also Paasch*, 117 Or App at 305 (independently assessing, after reciting the facts of the case and the trial court's ruling, "whether the circumstances justified the warrantless search"); *Morton*, 110 Or App at 222-23 (concluding that, although the trial court ruled that an officer's subjective belief that it was necessary to search a "mislaid" cigarette case for the owner's identification was reasonable, the circumstances established that it was not in fact objectively reasonable to do so).

We also note that, in the related context of abandoned property, we have consistently looked to both an officer's subjective belief as well as the objective reasonableness of that belief. In *State v. Belcher*, 89 Or App 401, 405, 749 P2d 591, *aff'd*, 306 Or 343, 759 P2d 1096 (1988), for example, we reasoned that, given "the circumstances of this case," there was "no objective basis for the officer reasonably to think that the pack had been abandoned."

Based on the foregoing analysis, we hold that, assuming ORS 98.005 applies to finders of property who are engaged in law enforcement, the obligation it places on finders to attempt to return found property of "unknown" owners and the rationale in *Pidcock* do not authorize a warrantless police search of found property when the police who find the property have only a good faith belief that the property is lost. Instead, the trial court must also determine whether the subjective belief of the police that the property was lost is objectively reasonable under the circumstances.

Applying that principle to the facts here, we conclude that it was not objectively reasonable under the circumstances for Oller to have concluded that defendant's bag was lost property. "Lost property is defined as that with the possession of which the owner has involuntarily parted, through neglect, carelessness, or inadvertence. It is property which the owner has unwittingly suffered to pass out

of his possession, and of the whereabouts of which he has no knowledge." *Jackson v. Steinberg*, 186 Or 129, 133, 200 P2d 376 (1948) (citation omitted). *See* commission commentary at 134 (citing to the above definition of "lost property" from *Jackson* as the definition relevant to the civil and criminal statutes pertaining to the rights, duties, and theft of lost property). The state does not dispute that definition.

In determining whether it was objectively reasonable to conclude that defendant's property was lost, we consider, among other likely relevant circumstances, the nature of the property as found, the location in which it was found, the manner in which it was found, the potential or possible amount of time the property may have been separated from its owner, and the presence or absence of any other measure taken to determine ownership before searching it. Here, the officers' testimony, as summarized above, established that defendant's bag was located on private property, between approximately three to, at most, five feet away from the door to defendant's residence. According to Oller, the bag was approximately 75 feet away from the street and would not have been visible to a person walking down the street. Oller began searching the bag after he and Giovannetti had arrived and observed the bag for no more than two minutes, despite the bag's proximity to the apartment door, and without first attempting to determine if any of the residents from the few nearby units in the building could identify the bag's owner. We conclude that, under those circumstances, it was not objectively reasonable for Oller to conclude that defendant had involuntarily parted with his bag or that he had no knowledge of its whereabouts at the time that Oller searched it. Because the warrantless search of the bag was not justified as a search of lost property, the trial court erred by denying defendant's motion to suppress the evidence obtained as a result of the search.

Reversed and remanded.